Jeffrey D. Kaliel (CA Bar No. 238293)
Sophia G. Gold (CA Bar No. 307971)
jkaliel@kalielpllc.com
sgold@kalielpllc.com
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

TROY HOWARDS, on behalf of
himself and all others similarly situated,

          Plaintiff,

   v.

FIFTH THIRD BANK,

          Defendant.

**CASE No. 2:18-cv-01963-DDP-AS**

**FIRST AMENDED CLASS ACTION COMPLAINT**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Troy Howards ("Plaintiff"), on behalf of himself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1.     Plaintiff brings this action on behalf of himself and a class of all similarly situated consumers against Defendant Fifth Third Bank ("FTB" or "Bank"), arising from three separate practices involving its checking accounts: 1) its assessment of so-called Non-Fifth Third ATM Fees ("Out of Network Fees" or "OON Fees") on ATM withdrawal transactions that actually are in-network ATM transactions that should be entirely free; 2) the assessment of multiple Non-Sufficient Funds Fees ("NSF Fees") on the same transaction; 3) the assessment of overdraft fees ("OD Fees") on one-time debit card transactions, which is barred by the contract and is deceptive.

2.     ATM Fee revenue for FTB has risen dramatically in recent years and become one of the primary drivers of Bank fee income.  FTB assesses OON Fees in the amount of $2.75 on its accountholders who withdraw funds from ATMs not owned by FTB or its partners, which include the Allpoint Network of ATMs and ATMs located in 7-Eleven stores.

3.     However, even when FTB accountholders diligently use in-network ATMs, FTB still charges OON Fees on ATM withdrawals, in violation of express contract provisions, surreptitiously subtracting fees from accountholders' accounts.

4.     Moreover, in violation of its contract and reasonable consumer understanding, FTB often charges more than one $37 NSF Fee on the *same transaction*, even though the contract states—and reasonable consumers understand—that the same transaction can only incur a *single* NSF Fee.  Indeed, with this improper practice, FTB was able to rack up an astounding *$111 in NSF and OD Fees on a single $13 Uber transaction*.  These double and triple penalties crush accountholders already struggling to make ends meet.

5.     In addition, in violation of contract promises to the contrary, FTB charges OD Fees on one-time debit card transactions even on consumers like Plaintiff who have not opted-in to the Bank's Overdraft Coverage service.

6.     Together, these practices work in concert to catch accountholders—many of whom are struggling get by—in an increasingly devastating cycle of fees.

7.     Plaintiff, and other FTB customers, have been injured by FTB's improper practices.   On behalf of himself and the class, Plaintiff seeks damages, restitution and injunctive relief for FTB's breaches of contract and violation of California consumer protection statutes.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than FTB.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## PARTIES

10.     Plaintiff is a citizen of California residing in this District who maintains a Fifth Third checking account.

11.     Defendant Fifth Third Bank is a state bank with its headquarters and principal place of business located in Cincinnati, OH.  Among other things, FTB is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

FIRST AMENDED CLASS ACTION COMPLAINT

12. The practices described herein violate various contract terms, and are part of a multifaceted strategy to increase fee revenue improperly at the expense of accountholders.  The abusive and deceptive practices feed off each other:  once FTB ensnares an accountholder with one improper fee, it becomes that much more likely that the same accountholder will fall victim to other of the improper practices, as his or her financial position erodes due to the first and subsequent improper fees.

## I. FTB BREACHES ITS CONTRACT WITH CONSUMERS BY CHARGING OON FEES ON IN-NETWORK ATM TRANSACTIONS

### A. FTB's Contract States It Will Only Charge Fees on Out-of-Network ATM Transactions

13. Plaintiff has a FTB checking account, which is governed by FTB's standardized account agreement.

14. FTB issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, and ATM withdrawals at both FTB and non-FTB ATMs.

15. Pursuant to FTB's standard account agreement in effect at the time of the relevant transactions:

> **Fifth Third and Partner Networks ATM Fee $0**—No charge to use Fifth Third ATMs or partner network ATMs[1]
>
> Non-Fifth Third ATM Fee $2.75 for U.S. transactions $5 for international transactions
>
> Other ATM network owners may also assess a usage fee.
>
> [1.] Fifth Third Bank is part of the Allpoint®, Presto!, and 7-Eleven® network of ATMs, which features more than 43,000 fee-free ATMs nationwide. Customers of Fifth Third Bank

can withdraw cash fee-free from any domestic Allpoint®
ATM in addition to Presto! ATMs located in Publix stores,
and 7-Eleven® ATMs listed on our ATM locator on 53.com
or on our Mobile Banking app. ATM fees may apply to
certain 7-Eleven® locations in Oklahoma, Hawaii, and
Alaska. Any 7-Eleven® location listed on our ATM locator
is fee-free.

16.     In short, FTB states no ATM Fees whatsoever will be charged for in-
network FTB ATM transactions, including those undertaken at Allpoint ATMs and
ATMs located nationwide in 7-11 stores.

17.     The Fee Schedule similarly states:

Fifth Third ATM Fee $0 – No charge to use Fifth Third
ATMs Non-Fifth Third ATM Transactions $2.75 for U.S.
transactions
$5 for international transactions
Other ATM network owners may also assess a usage fee

**B.      FTB Improperly Charges OON Fees at In-Network ATMs**

18.     On multiple occasions, Plaintiff has used an in-network ATM located
inside a 7-Eleven store at 11285 Santa Monica Blvd. in Los Angeles, CA for cash
withdrawals.

19.     However, on numerous occasions FTB charged Plaintiff $2.75 OON Fees
for these transactions, in violation of its contractual promise not to do so.

20.     For example, FTB improperly charged Plaintiff OON Fees for ATM
withdrawals at 11285 Santa Monica Blvd. on July 7, 2017 and December 12, 2017.

21.     Fifth Third has the capability to distinguish between in-network and out
of network ATMs in a uniform, regular, and systematic way, in order to ensure that its
accountholders do not improperly receive OON Fees.  However, FTB intentionally
chose not to avail itself of this capability, and chose as a matter of policy to program
its fee assessment systems to allow the assessment of OON Fees even on transactions
undertaken at in-network ATMs.

22.     Upon information and belief, FTB was aware of this issue and knew its accountholders were being improperly assessed OON Fees at in-network ATMs (including Allpoint ATMs and those located in 7-11 stores), but it did nothing to stop the improper fees or to automatically provide refunds where it knew they were due.

23.     The assessment of OON Fees at an in-network ATM was not a result of fraud or mistake.  Rather, the assessment was the result of an intentional bank policy to program its fee assessment systems to allow the assessment of OON Fees even on transactions undertaken at in-network ATMs and/or to mis-code transactions at in-network ATMs in order to increase fee revenue.

24.     Moreover, FTB worked to conceal from accountholders its assessment of OON Fees on in-network ATM withdrawals.

25.     Plaintiff was not informed at the ATM that he would be charged a OON Fee for usage of the in-network ATM.

26.     Nor was there any indication that the in-network withdrawal would be considered an out of network withdrawal, either during the transaction or on the receipt provided at the end of the transaction.

27.     The Deposit Agreement states that "[y]ou will get a receipt at the time you make any transfer to or from your account using one of our Automated Teller Machines (ATM) or point-of-sale terminals."  That receipt listed no surcharge in the withdrawal amount for use of the ATM—which would have occurred if the ATM itself had considered Plaintiff's transaction to be an out-of-network transaction.

28.     Because all ATM screens and receipts provided to Plaintiff listed the correct withdrawal amount and gave no indication an OON Fee would later be surreptitiously deducted from Plaintiff's account.  Absent any disclosure Plaintiff had no reason to suspect that FTB would surreptitiously deduct a fee from his account at a later time.

29.     Having not received notice at the ATM or via a receipt provided afterward, and having received an express promise in his account documents that such

ATMs would be fee-free, Plaintiff did not know FTB had surreptitiously charged him an OON Fee later, and had no reason to suspect this would occur.

30. Fifth Third has the capability to distinguish between in-network and out of network ATMs in a uniform, regular, and systematic way, in order to ensure that its accountholders do not improperly receive OON Fees. However, FTB intentionally chose not to avail itself of this capability, and chose as a matter of policy to program its fee assessment systems to allow the assessment of OON Fees even on transactions undertaken at in-network ATMs—knowing full well that such a decision would cause its own accountholders to receive plainly improper OON Fees.

31. Upon information and belief, FTB was aware of this issue and knew its accountholders were being improperly assessed OON Fees, but it did nothing to stop it or to automatically provide refunds where they were due.

32. The assessment of OON Fees at an in-network ATM was not a result of fraud or mistake. Rather, the assessment was the result of an intentional bank policy to program its fee assessment systems to allow the assessment of OON Fees even on transactions undertaken at in-network ATMs and/or to mis-code transactions at in-network ATMs in order to increase fee revenue.

II. **FTB ASSESSES TWO, THREE AND SOMETIMES MORE NSF FEES ON THE SAME TRANSACTION**

33. As a matter of policy and practice, FTB has programmed its systems to charge two or three NSF Fees on the same electronic transactions, when those transactions are rejected for insufficient funds then re-submitted for payment over and over again.

34. This abusive practice is not universal in the banking industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF or OD Fee on the same item when it is

submitted for payment multiple times. Instead, they charge one NSF Fee even if a transaction is resubmitted for payment multiple times.

35. Worse, FTB's deposit agreement never discloses this practice; to the contrary, it indicates it will not undertake this practice.

### A. The Purpose and Nature of OD and NSF Fees

36. When a bank rejects an attempted transaction on a checking account due to insufficient funds, it sends an electronic notification back to the merchant stating that the transaction was not approved. FTB charges a $37 NSF Fee when it performs this action. Because rejection is essentially cost-free, the $37 NSF is pure profit.

37. The rejection of an attempted transaction provides zero benefit to the accountholder, as the CFPB has noted:

> An important consumer outcome of any overdraft program is the percentage of negative transactions that are paid (i.e., result in overdrafts) or returned unpaid (i.e., were NSFs). **Paying overdraft transactions may confer some benefit (in exchange for the associated fees and other costs) to consumers by helping them make timely payments and avoid late penalty fees and/or interest charges from a merchant or biller. In contrast, returning an item generally confers little benefit to the consumer (other than perhaps deterring future overdrafting and any subsequent consequences) and can result in an NSF fee as well as additional related fees, such as a returned check fee charged by the institution to whom the check was presented or a late fee charged by the entity to whom payment was due.** At the median, study banks paid into overdraft 83% of transactions that exceeded the available balance in 2011 and returned 17%.

*CFPB Study of Overdraft Programs*, CFPB (June 2013), at 26 (emphasis added), available at https://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf.

38. Multiple rejection and fee assessments on the same transaction not only provide no benefit, they devastate already-strapped accountholders.

### B. Plaintiff's Experience

39.     On June 19, 2017, Plaintiff took an Uber ride that cost $13.16.

40.     Fifth Third rejected payment of that transaction due to insufficient funds, and charged Plaintiff a $37 NSF Fee.

41.     Seven days later, on June 26, 2017, the same transaction was submitted for payment again, and again Fifth Third rejected the transaction due to insufficient funds, and again charged Plaintiff a $37 NSF Fee.

42.     FTB expressly referred to this transaction on Plaintiff's bank statements as a "RETRY PAYMENT," indicating even FTB understood this transaction to be another iteration of the same authorization for payment.

43.     Over a week later, the same transaction was submitted for payment yet again, and this time Fifth Third paid the transaction and charged a $37 OD Fee for doing so.

44.     FTB expressly referred to this transaction on Plaintiff's bank statements as a "RETRY PAYMENT," indicating even FTB understood this transaction to be another iteration of the same authorization for payment.

45.     In sum, *FTB charged Plaintiff $111 in fees to process a single $13 payment to Uber.*

46.     Plaintiff took no affirmative action to reinitiate or resubmit the transactions, which were submitted for payment automatically over and over again.

47.     Plaintiff understood the payment to Uber be a single transaction, capable at most of receiving a single NSF or OD Fee.

48.     The same pattern occurred on August 1, 2017 and August 8, 2017, when Fifth Third charged two $37 NSF Fees on a single $6.99 Uber transaction—or *$74 in fees on a $6.99 transaction*.

**C.     FTB Violates the Account Disclosures When It Charges More than One NSF or OD Fee on the Same "Item"**

49.     Fifth Third's account documents state that it will charge $37 per "item" that is returned due to insufficient funds.

50.     While the term "item" is not expressly defined, its usage throughout the Bank's deposit agreement reveals that the term "item" must describe all iterations of a given instruction for transfer or payment from a checking or savings account.

51.     The deposit agreement expressly states that an "item" is an instruction for payment authorized by the accountholder:

> Customer authorizes Bank to honor any **items** bearing Customer's account number if Customer has disclosed that account number to the payee or any representative, affiliate, or party associated with the payee, whether or not the **item** is signed by the Customer. Customer further agrees that Bank may presume that authorization was obtained by the issuer of the **item**.

(emphasis added).

52.     Because, as occurred with Plaintiff's transactions, Plaintiff has only made one authorization for payment, there is no new "item" when that transaction is rejected then automatically resubmitted for payment.

53.     Numerous other references to "item" throughout the account documents indicate that an "item" includes any re-submissions of a transaction after an initial rejection.

54.     For example, a given transaction amount will only be deducted from an account once, even if multiple payment attempts occur. Accordingly, for purposes of error, forgery and fraud alert purposes, there is only one "item" to examine, even if that item has been submitted multiple times:

> Customer agrees to carefully examine and reconcile account statements…Customer will notify Bank of any discrepancy with any **item**; including, but not limited to, deposits, withdrawals, and checks, within 30 days of the statement mailing…Customer will also notify Bank of any forgery or alteration of any **item** within 30 days….If notification is not received, Bank will have no liability for such **item(s).** Customer also agrees that Bank will have no liability if the item is forged, altered or counterfeited in such a manner that the fraud could not be detected by a reasonable person.

55.     In sum, the same instruction for payment on an account cannot conceivably become a new "item" each time it is rejected for payment then resubmitted, especially when—as here—Plaintiff took no action to resubmit it.

56.     Even if an instruction for payment is re-submitted, it is still the same "item." It is simply another attempt at Plaintiff's original order or instruction.

57.     This is important because FTB's Fee Schedule states that a "Returned **Item** Fee" is assessed at "$37/**item**":

> Checking and Savings Account
> Overdraft/Returned Item Fee
>
> Overdraft or Returned Item Fees Checking & Savings
> Accounts: $37/**item** for each occurrence…You will not
> be charged for more than 5 items per business day.

(emphasis added).

58.     There is zero indication anywhere in the account documents that the same "Item" is eligible to incur *multiple* NSF or OD Fees.

59.     Moreover, the deposit agreement never describes the circumstances under which Returned Item Fees are assessed.  With respect to *overdraft fees*, on the other hand, the Bank states:

60.     We may assess a fee for overdrafts created by checks, in-person withdrawals, ATM withdrawals, debit card transactions, or other debits. We may assess an overdraft/returned item fee whether we pay or return a debit (-)But that does not encompass returned items, since obviously, there is no "overdraft created by" a returned payment. No money is deducted whatsoever.

61.     There is no express description of when a returned item fee is charged, other than a reference to see the "pricing and services" section:

> We may assess an overdraft/returned item fee whether we pay or return a debit
> (-).

62. FTB uses singular terms to discuss the assessment of fees on transactions. FTB states that it "may assess an overdraft/returned item fee whether we pay or return a debit"—expressly using the singular "fee," not plural "fees."

63. This is binary: for a given transaction, the Bank may pay or return it, but it cannot do both for the same transaction, and it cannot do the same thing more than once.

64. Separately, FTB's Debit Card Agreement provides that the bank may "directly debit or credit the Account for the amount of a Card transaction shown on the sales draft, receipt or other record of the transaction, ... and to handle debit drafts in the same manner we handle checks on the Account."

65. Of course, "checks" cannot be returned and re-processed multiple times, incurring over $100 in fees. They are paid or rejected, period. FTB's promise to treat electronic debits "in the same manner handle checks" prohibits the multiple re-submission and multiple fee assessment on the same transaction.

66. In sum, FTB promises that one $37 NSF or OD Fee will be assessed per item, and "item" must mean all iterations of the same instruction for payment. As such, FTB breached the contract when it charged more than one fee per item.

67. Consistent with express representations in the contract, reasonable consumers understand any given authorization for payment to be one, singular "item" as that term is used in FTB's contract documents.

68. Upon information and belief, FTB has this same understanding in practice, since its systems code transactions in a way that alerts the Bank when the same item or transaction is being re-submitted for payment.

69. The contract documents bar FTB from assessing multiple NSF Fees on the same item.

70. Lastly, the contract documents never state that one transaction or item can incur multiple NSF Fees, and never discloses that one transaction can count as multiple "items" for purposes of fee assessment.

71.     Banks like Defendant that employ this abusive practice know how to plainly and clearly disclose it.  Indeed, other banks that do engage in this abusive practice disclose it expressly to their accountholders—something Defendant here never did.

72.     For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as FTB, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

73.     First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

74.     Klein Bank similarly states in its Online Banking Agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

75.     FTB provides no such disclosure, and in so doing, deceives its accountholders.

### D. **FTB Abuses Discretion**

76. To the extent the account documents do not explicitly bar the polices described above, FTB exploits contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it uses these policies.

77. For example, it was bad faith and totally outside Plaintiff's reasonable expectations for the Bank to use its discretion to assess $111 in fees for a single, $13 Uber transaction.

78. The Bank uses its discretion to define the meaning of "item" in an unreasonable way that violates common sense and reasonable consumer expectations. FTB uses its contractual discretion to set the meaning of that term to choose a meaning that directly causes more NSF Fees or OD Fees.

79. Worse, as is evident from that transaction, FTB engages in a pattern of rejecting, then, approving, the same items in order to maximize fee revenue. FTB initially denied, then approved, the same item in order to increase fee revenue. With respect to Plaintiff, it rejected the $13 payment twice, *only to pay it on the third attempt into overdraft*.

80. The Bank apparently had the discretion to pay the transaction into overdraft from the beginning, and it *waited to do so* until the third payment attempt in order to assess more fees on Plaintiff.

81. The reject-then-approve pattern used by FTB has one purpose: to maximize fee revenue for the Bank.

82. Moreover, the Bank provides itself discretion to refuse to re-submit transactions that are initially rejected. It abuses that discretion to repeatedly resubmit transactions and to charge fees each time. As the deposit agreement states:

> If for any reason an amount is not paid in full from your Bank Account upon the initial presentment, we may, at our option and without notice, re-present such amounts against your Bank Account or treat such situation as a stop payment instruction from you and take no further action.

83.    Additionally, FTB grants itself discretion to charge—or not to charge—an NSF Fee on a given transaction: "We **may assess** an overdraft/returned item fee whether we pay or return a debit (-)."  When it charges more than one NSF or OD Fee on a given item or transaction, FTB engages in bad faith and contradicts reasonable consumer expectations.

## III.    FTB IMPROPERLY CHARGES NSF AND OD FEES ON ONE-TIME TRANSACTIONS PAID FOR WITH DEBIT CARDS AND ON OTHER TRANSACTIONS THAT ARE NOT "AUTOMATIC DEBITS"

84.    In its Deposit Account Rules & Regulations, Fifth Third an express promise to its consumers:  it promises its customers who do not opt into its "Overdraft Coverage" service that it will not authorize and pay overdrafts for items that are not "automatic debits, will not authorize and pay overdrafts for items paid for with debit cards, and will therefore not charge OD or NSF Fees on such transactions.

85.    But Fifth Third does in fact charge OD and NSF Fees on such transactions to accountholders that have not opted in to its Overdraft Coverage, including for purchases of rides from Uber and other everyday transactions that it knows or should know are not "automatic" or recurring.

86.    Fifth Third's Fee Schedule states:

Debit/ATM Overdraft Coverage Options
With Overdraft Coverage, debits and payments may be made even if you do not have enough money in your account.
- Overdraft Coverage for Checks and Automatic Debits comes standard with most checking accounts (per-item overdraft fees apply).
- **Overdraft Coverage for ATM transactions and Debit Card purchases is optional and requires enrollment.**

When you opt-in to Overdraft Coverage (ATM/Debit Card), overdraft fees may apply to these transactions.

**When you choose not to opt-in to Overdraft Coverage (ATM/Debit Card), your card transactions are denied and no overdraft fees are applied to those transactions).**

(emphasis added).

87.    Similarly, the Deposit Agreement states:

For consumer accounts, we will not assess a per item overdraft fee for ATM and one-time debit card items unless you have accepted Overdraft Coverage on your account for these transactions.

[…]

One way we can cover your overdrafts is by extending a standard Overdraft Coverage service as part of your checking account relationship. As part of this service, we do authorize and pay overdrafts for the following types of transactions:

- Checks and other transactions made by using your checking account number
- Automatic bill payments

However, we do not authorize and pay overdrafts for the following types of transactions unless you instruct us to do so for the following:

- ATM Transactions
- Everyday debit card transactions

[….]

Electronic Transfer" shall mean any electronic banking transaction, including deposits or withdrawals accomplished electronically, as well as all transfers resulting from debit card transactions, even if an electronic terminal is not involved at the time of the transaction.

88.    Uber is a well-known ride sharing service that is used across the country. There is no mystery about what their business is: one-time ride shares. Uber is not a subscription service wherein customers pay an automatic or recurring monthly fee. Such transactions do not occur automatically, do not occur on a prearranged schedule, are not for a set amount, and only occur on a per-ride basis.

89.    Even though Fifth Third knows Uber customers pay per ride, and do not pay recurring pre-arranged fees, it repeatedly charges OD and NSF Fees for everyday debit transactions with Uber that are not "automatic."

90.    Even though it promises customers who did not opt into Overdraft Coverage that it will not authorize or pay, or in turn charge OD or NSF Fees, for

16

transactions like Uber transactions, Fifth Third as a matter of bank policy <u>does</u> charge accountholders such fees for such transactions.

91.    Contrary to contractual promises, FTB repeatedly charged Plaintiff OD Fees on non-automatic transactions paid for with a debit card, even though Plaintiff had <u>not</u> opted-in to Overdraft Coverage at the time of the transactions.

92.    For example, on July 20, 2017, FTB charged Plaintiff two $37 OD Fees for non-automatic Uber rides in the amount of $4.99 each, and paid for with Plaintiff's debit card.

93.    For example, on July 27, 2017, FTB charged Plaintiff two $37 OD Fees for non-automatic Uber rides in the amount of $6.99 each, and paid for with Plaintiff's debit card.

94.    In addition, on June 22, 2017, FTB charged Plaintiff a $37 OD Fee for a non-automatic Uber ride in the amount of $5.00, and paid for with Plaintiff's debit card.

## **CLASS ALLEGATIONS**

95.    Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

96.    The proposed classes are defined as:

> All FTB checking account holders in the United States who within the applicable statute of limitation were assessed an OON Fee for a cash withdrawal at an in-network ATM (the "OON Fee Class").

> All FTB checking account holders in California who within the applicable statute of limitation were assessed an OON Fee for a cash withdrawal at an in-network ATM (the "California OON Fee Class").

> All FTB checking account holders in the United States who, during the applicable statute of limitations, were charged

multiple NSF Fees on the same transaction. (the "NSF Class").

All FTB checking account holders in California who, during the applicable statute of limitations, were charged multiple NSF Fees on the same transaction. (the "California NSF Subclass").

All FTB checking account holders in the United States who, during the applicable statute of limitations, were not opted in to Overdraft Coverage and were charged OD or NSF Fees on transactions that were not automatic debits or were paid for with a debit card (the "Opted Out Class").

All FTB checking account holders in California who, during the applicable statute of limitations, were not opted in to Overdraft Coverage and were charged OD or NSF Fees on transactions that were not automatic debits or were paid for with a debit card (the "California Opted Out Subclass").

All of the classes are collectively referred to as the "Classes" and the California subclasses are collectively referred as the "California Subclasses."

97.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

98.     Excluded from the Classes are FTB, its parents, subsidiaries, affiliates, officers and directors, any entity in which FTB has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

99.     The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to FTB's records.

100.    The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, was charged improper OON Fees and NSF Fees. The representative Plaintiff, like all Class

members, has been damaged by FTB's misconduct in that he has paid improper OON Fees and NSF Fees. Furthermore, the factual basis of FTB's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

101. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

102. Among the questions of law and fact common to the Classes are whether FTB:

    a.    Charged OON Fees on in-network ATM transactions;

    b.    Breached its contract with consumers by charging OON Fees on in-network ATM transactions.

    c.    Charged multiple NSF Fees on a single transaction;

    d.    Breached its contract with consumers by charging multiple NSF Fees on a single transaction;

    e.    Charges OD Fees on one-time debit card transactions made by accountholders who did not Opt In to Overdraft Coverage;

    f.    Breached its contract with consumers by charging OD Fees on one-time debit card transactions made by accountholders who did not Opt In to Overdraft Coverage;

    g.    Breached the covenant of good faith and fair dealing by charging OON Fees on in-network ATM transactions;

    h.    Breached the covenant of good faith and fair dealing by charging multiple NSF Fees on a single transaction;

    i.    Violated California consumer protection statutes by charging multiple NSF Fees on a single transaction;

    j.    Violated California consumer protection statutes by charging OON Fees on in-network ATM transactions;

           k.    Whether Plaintiff and the Class were damaged by Defendant's conduct and if so, the proper measure of damages.

103.   Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

104.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of FTB, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and FTB's misconduct will proceed without remedy.

105.   Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
## Breach of Contract Including Breach of the Covenant of Good Faith and Fair Dealing
## (On Behalf of the Classes)

106.   Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

107.   Plaintiff and FTB have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in FTB's Account Agreement and related documentation.

108.   No contract provision authorizes FTB to charge OON Fees for in-network ATM transactions.

109.   FTB charged Plaintiff and class members OON Fees on in-network ATM transactions.

110.   Therefore, FTB breached the terms of its contract with consumers by charging OON Fees at in-network ATMs.

111.   In addition, for the reasons discussed herein, the contract documents bar FTB from assessing multiple NSF Fees on the same item or transaction.

112.   FTB charged Plaintiff and class members multiple NSF Fees on the same transaction.

113.   Therefore, FTB breached the terms of its contract with consumers by charging multiple NSF Fees on the same transaction.

114.   Finally, for the reasons discussed herein, the contract documents bar FTB from assessing OD or NSF Fees on non-automatic transactions paid for with a debit card by accountholders who have not opted in to Overdraft Coverage.

115.   FTB charged Plaintiff and class members OD Fees on non-automatic transactions paid for with a debit card, even though Plaintiff and the Class did not opt in to Overdraft Coverage.

116.   Therefore, FTB breached the terms of its contract by charging OD Fees on non-automatic transactions paid for with a debit card.

117.   Additionally, under the laws of the states where FTB does business, good faith is an element of every contract.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter

– of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

118. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

119. FTB has breached the covenant of good faith and fair dealing in the Account Agreement through its OON Fee policies and practices as alleged herein. FTB should not have used its discretion to charge OON Fees on in-network ATM transactions.

120. In addition, FTB grants itself discretion to charge—or not to charge—an NSF Fee on a given transaction: "We may assess an overdraft/returned item fee whether we pay or return a debit (-)." When it charges more than one NSF on a given transaction, FTB breaches the covenant of good faith and fair dealing.

121. Finally, FTB has breached the covenant of good faith and fair dealing in OD Fee policies and practices as alleged herein. FTB should not have used its discretion to charge OD Fees on non-automatic transactions paid for with a debit card by accountholders who did not opt in to Overdraft Coverage.

122. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

123. Plaintiff and members of the Class have sustained damages as a result of FTB's breach of contract and breach of the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF
### Violation of California Unfair Competition Law

### Business and Professions Code § 17200
**(On Behalf of the California Subclasses)**

124.   Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

125.   Defendant's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, *et seq*.

126.   The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.  In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

127.   By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable,  and sweeps within its scope acts and practices not specifically proscribed by any other law.

128.   As further explained herein, Defendant's conduct violates the UCL's "unfair" prong insofar as Defendant charges OON Fees on in-network ATM transactions; Defendant charges multiple NSF Fees on a single transaction; and Defendant charges OD Fees on non-automatic debit card transactions, even when consumers do not opt in to OD Coverage.

129.   Defendant's conduct was not motivated by any business or economic need or rationale.  The harm and adverse impact of Defendant's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives.

130.   The harm to Plaintiff and Class Members arising from Defendant's unfair practices relating to the imposition of the improper fees outweighs the utility, if any, of those practices.

131.    Defendant's unfair business practices as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and members of the Class.

132.    Defendant's conduct was substantially injurious to consumers in that they have been forced to pay improper, abusive, and/or unconscionable fees.

133.    Moreover, Defendant committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it affirmatively and knowingly misrepresented its OON Fee , NSF Fee, and OD Fee practices.  Such representations misled the Plaintiff and are likely to mislead the public.

134.    Specifically, Plaintiff relied on the representation in FTB's fee schedule that in-network ATM transactions are free. For that reason, Plaintiff drove to an ATM in the Allpoint network, which FTB represented was in-network. If Plaintiff knew he would be charged an OON fee for using an Allpoint ATM, he would have used a different ATM.

135.    Moreover, Plaintiff relied on FTB's representations regarding its OD Coverage. Specifically, Plaintiff did not believe he would be charged OD Fees on non-recurring debit card transactions. If Plaintiff knew would be charged OD Fees on non-recurring debit card transactions, Plaintiff  would have switched banks.

136.    Finally, Plaintiff relied on FTB's material omission regarding its NSF Fee practices. Specifically, Plaintiff had no idea he would be charged $111 in NSF Fees for a single $13 Uber ride. If Plaintiff knew he would be charged $111 in NSF Fees for a single Uber ride, he would have switched banks.

137.    Moreover, Defendant committed unlawful business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it violated the CLRA, as alleged herein.

138.    As a result of Defendant's violations of the UCL, Plaintiff and members of the Class have paid, and/or will continue to pay OON Fees, NSF Fees, and OD Fees and thereby have suffered and will continue to suffer actual damages.

### THIRD CLAIM FOR RELIEF
### Consumers Legal Remedies Act (CLRA) Cal. Civ. Code § 1750 *et seq.*
### (On Behalf of the California Subclasses)

139.   Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

140.   Plaintiff and each of the Class members are "consumers" within the meaning of Civil Code § 1761(d).

141.   Plaintiff and Class members engaged in "transactions" with FTB within the meaning of Civil Code § 1761(e).

142.   Defendant's provision of debit cards, offering of ATM services, and rejection of transactions for which there are insufficient funds are "services" within the meaning of §§ 1761(b).

143.   Defendant's actions, representations, and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods or services to any consumer.

144.   As detailed above, FTB has engaged, and continues to engage, in unfair methods of competition and has undertaken unfair or deceptive acts or practices in violation of the CLRA by, *inter alia*: charging OON Fees on in-network ATM Fees, charging multiple NSF Fees on the same transaction, and charging OD Fees on non-automatic debit card transactions even for consumers who did not opt in to OD Coverage.

145.   Defendant made material misrepresentations and/or omissions concerning each of these practices upon which Plaintiff relied.

146.   Specifically, Plaintiff relied on the representation in FTB's fee schedule that in-network ATM transactions are free. For that reason, Plaintiff drove to an ATM in the Allpoint network, which FTB represented was in-network. If Plaintiff knew he would be charged an OON fee for using an Allpoint ATM, he would have used a different ATM.

147.   Moreover, Plaintiff relied on FTB's representations regarding its OD Coverage. Specifically, Plaintiff did not believe he would be charged OD Fees on non-recurring debit card transactions. If Plaintiff knew would be charged OD Fees on non-recurring debit card transactions, Plaintiff  would have switched banks.

148.   Finally, Plaintiff relied on FTB's material omission regarding its NSF Fee practices. Specifically, Plaintiff had no idea he would be charged $111 in NSF Fees for a single $13 Uber ride. If Plaintiff knew he would be charged $111 in NSF Fees for a single Uber ride, he would have switched banks.

149.   Plaintiff and the Class members are injured in fact and lose money as a direct and proximate result of Defendant's unfair methods of competition and/or deceptive acts or practices in that they incurred OON Fees, NSF Fees, and OD Fees.

150.   Plaintiff and the Class members seek declaratory relief, injunctive relief, and other relief allowable under Bus. & Prof. Code § 17203, including but not limited to enjoining Defendant from continuing to engage in the unfair, unlawful, and fraudulent conduct alleged herein.

151.   Pursuant to Section 1782(d) of the CLRA, Plaintiff reserves the right to amend this Complaint to include a request for damages under the CLRA pursuant to Section 1782(a) of the CLRA within thirty (30) days of providing the required notice.

152.   Plaintiff's affidavit stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) is attached hereto.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.   Declaring FTB's OON Fee, NSF Fee, and OD Fee policies and practices to be wrongful, unfair and unconscionable;

2.   Restitution of all relevant fees paid to FTB by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.   Disgorgement of the ill-gotten gains derived by FTB from its misconduct;

1    4.    Actual damages in an amount according to proof;

2    5.    Statutory damages as permitted by law;

3    6.    Punitive and exemplary damages;

4    7.    Pre-judgment interest at the maximum rate permitted by applicable law;

5    8.    Costs and disbursements assessed by Plaintiff in connection with this

6    action, including reasonable attorneys' fees pursuant to applicable law; and

7    9.    Such other relief as this Court deems just and proper.

8                      **<u>DEMAND FOR JURY TRIAL</u>**

9         Plaintiff and all others similarly situated hereby demand trial by jury on all

10   issues in this complaint that are so triable as a matter of right.

11

12   Dated:  July 2,  2018                    Respectfully submitted,

13

14                                  /s/ Jeffrey D. Kaliel
                                    _____
15                                  Jeffrey D. Kaliel (CA Bar No. 238293)
                                    Sophia G. Gold (CA Bar No. 307971)
16                                  KALIEL PLLC
                                    1875 Connecticut Ave., NW, 10th Floor
17                                  Washington, D.C.  20009
                                    (202) 350-4783
18                                  *jkaliel@kalielpllc.com*
                                    *sgold@kalielpllc.com*
19
20
                                    Attorneys for Plaintiff and the Putative Class
21

22

23

24

25

26

27

28

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 2nd day of July, 2018, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

/s/ Jeffrey D. Kaliel
Jeffrey D. Kaliel