**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| TROY HOWARDS, on behalf of himself and others similarly situated, | Case No.: 1:18-cv-869 |
| Plaintiffs, | Judge: Hon. Michael R. Barrett |
| vs. | |
| FIFTH THIRD BANK, | |
| Defendant. | **DEFENDANT FIFTH THIRD BANK'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** |

Defendant Fifth Third Bank respectfully moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Amended Class Action Complaint of Plaintiff Troy Howards [Dkt. No. 17] for failure to state a claim upon which relief can be granted.[1]  Fifth Third Bank respectfully incorporates its accompanying Memorandum in Support of Fifth Third Bank's Motion To Dismiss Plaintiff's First Amended Class Action Complaint by this reference.

---

[1] This action was initially commenced in the United States District Court for the Central District of California, with Plaintiff filing his original complaint on March 8, 2018 (Doc. #1).  Fifth Third moved to transfer venue to this Court (Doc. #13) and moved to dismiss Plaintiff's original complaint (Doc. #14).  Plaintiff filed a First Amended Class Action Complaint (the "FAC"), (Doc. #17), which Fifth Third also moved to dismiss (Doc. #21).  This motion was fully briefed in the California Court.  (Doc. #21, #24, #25).  On December 7, 2018, Judge Pregerson entered the Order Granting Defendant's Motion to Transfer Venue (Doc. #41), transferring venue to this Court.  Judge Pregerson did not rule on Fifth Third's motion to dismiss the Amended Complaint. At a telephonic status conference with this Court on March 20, 2019, the parties discussed Fifth Third's pending motion to dismiss the FAC (Doc. #21).  Plaintiff's counsel stated that there was recent case law affecting the arguments raised in Fifth Third's Motion and requested an opportunity to file an additional opposition.  Accordingly, the Court directed the parties to file the briefing related to Fifth Third Bank's motion to dismiss the FAC anew.

Dated: April 3, 2019                          Respectfully submitted,

BAKER & HOSTETLER LLP

*/s/ WHHawkins*
William H. Hawkins II (0003865)
(*Trial Attorney*)
Email:       whawkins@bakerlaw.com
312 Walnut Street, Suite 3200
Cincinnati, OH  45202-4074
513.929.3481 / Fax 513.929.0303

Guenther K. Fanter (0075686)
Email:  kfanter@bakerlaw.com
Key Tower 127 Public Square Suite 2000
Cleveland, OH  44114-1214
216.861.7096 / Fax 216.696.0740

Julie Singer Brady (FL 0389315) (*phv*)
Email:       jsingerbrady@bakerlaw.com
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
407.649.4000 / Fax 407.841.0168

*Counsel for Defendant, Fifth Third Bank*

## CERTIFICATE OF SERVICE

I certify that on April 3, 2019, a true and authentic copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to the following:

> Stuart E. Scott
> SPANGENBERG SHIBLEY & LIBER LLP
> 1001 Lakeside Avenue East, Suite 1700
> Cleveland, OH 44114
> (216) 696-3232
> (216) 696-3924 (FAX)
> sscott@spanglaw.com
>
> Jeffrey D. Kaliel
> Sophia G. Gold
> jkaliel@kalielpllc.com
> sgold@kalielpllc.com
> KALIEL PLLC
> 1875 Connecticut Ave., NW, 10th Floor
> Washington, D.C. 20009
> (202) 350-4783

*/s/ WHHawkins*
*Counsel for Defendant, Fifth Third Bank*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| TROY HOWARDS, individually and on behalf of all others similarly situated, | Case No. 1:18-cv-869 |
| Plaintiff, | Judge:  Hon. Michael R. Barrett |
| v. | |
| FIFTH THIRD BANK, | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF FIFTH THIRD BANK'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND AND SUMMARY OF ALLEGATIONS ............................................. 2

    A.    The Parties ................................................................................................ 2

    B.    Howards' Insufficient-Funds Transactions............................................... 3

    C.    Howards Agreed to Pay NSF and OD Fees to Fifth Third And To Notify the Bank of Any Disputed Fees........................................................................... 4

    D.    Howards' Out-of-Network Fee Claim ..................................................... 5

III.    LEGAL STANDARD................................................................................................. 5

IV.    ARGUMENT ........................................................................................................... 6

    A.    The Court Should Dismiss Howards' Breach of Contract Claim As To NSF Fees (Count I)................................................................................................. 6

    B.    Count I Should Also Be Dismissed Because Ohio Law Does Not Recognize A Standalone Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing. ................................................................................................... 9

    C.    The Court Should Dismiss Howards' UCL and CLRA Claims (Counts II and III). ................................................................................................... 10

        1.    Howards' UCL And CLRA Claims Are Preempted.................................10

        2.    The Parties' Choice-Of-Law Provision Bars Howards' UCL Claim........12

        3.    Howards Has An Adequate Remedy At Law. ........................................13

        4.    The CLRA Does Not Apply To Claims Arising Out Of Checking Accounts, Debit Cards, And Overdrafts. ....................................................14

        5.    Howards' Unlawful UCL Claim Fails Because His CLRA Claim Fails...16

        6.    Howards Fails To Adequately Plead His UCL And CLRA Claims. .........16

    D.    The Court Should Dismiss Count I Due To Howards' Failure To Timely Object To The Fees About Which He Complains ........................................... 18

V.    CONCLUSION........................................................................................................ 20

CERTIFICATE OF SERVICE ......................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp.*,
    16 F.3d 684 (6th Cir. 1994) .........................................................................................9

*Aliya Medcare Finance, LLC v. Nickell*,
    No. CV 14–07806 MMM (Ex), 2015 WL 4163088 (C.D. Cal. July 9, 2015) ........................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................5

*Atl. Marine Constr. Co. v. United States Dist. Court*,
    571 U.S. 49 (2013) ...................................................................................................12

*Au Rustproofing Ctr., Inc. v. Gulf Oil Corp.*,
    755 F.2d 1231 (6th Cir. 1985) ..................................................................................19

*Baba v. Hewlett-Packard Co.*,
    No. C 09–05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ....................................17

*Barnett Bank of Marion Cty., N.A. v. Nelson*,
    517 U.S. 25 (1996) ...................................................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................5, 6

*Berry v. American Express Publishing, Inc.*,
    147 Cal. App. 4th 224, 54 Cal. Rptr. 3d 91 (Cal. Ct. App. 2007) ..............................14, 15, 16

*Berrylane Trading, Inc. v. Transportation Ins. Co.*,
    754 F. App'x 370 (6th Cir. 2018) ................................................................................3

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
    685 F. Supp. 2d 1094 (E.D. Cal. 2010) ..................................................................16, 17

*Camacho v. JPMorgan Chase Bank*,
    No. 5:14-cv-04048, 2015 WL 5262022 (N.D. Cal. Sept. 9, 2015) ....................................19

*Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*,
    600 F. App'x 502 (9th Cir. 2015) ..............................................................................13

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
    511 F.3d 535 (6th Cir. 2007) ....................................................................................12

*In re Checking Account Overdraft Litig.*,
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) ................................................................15

*Conder v. Home Savings of Am.*,
    680 F. Supp. 2d 1168 (C.D. Cal. 2010) .........................................................16, 17

*Dillon v. NBCUniversal Media LLC*,
    No. CV 12–09728 SJO, 2013 WL 3581938 (C.D. Cal. June 18, 2013) ................16

*Eastham v. Chesapeake Appalachia, L.L.C.*,
    754 F.3d 356 (6th Cir. 2014) ..............................................................................6

*Gardner v. Safeco Ins. Co. of Am.*,
    No. 14–cv–02024–JCS, 2014 WL 2568895 (N.D. Cal. June 6, 2014)...................14

*Golihue v. Nat'l City Bank*,
    969 N.E.2d 1233 (Ohio App. 2011) ......................................................................18

*Gutierrez v. Wells Fargo & Co.*,
    622 F. Supp. 2d 946 (N.D. Cal. 2009) ..................................................................15

*Gutierrez v. Wells Fargo Bank, NA*,
    704 F.3d 712 (9th Cir. 2012) ...............................................................10, 11, 12

*Hawthorne v. Umpqua Bank*,
    No. 11-cv-06700-JST, 2013 WL 5781608 (N.D. Cal. Oct. 25, 2013)....................11

*Henryhand v. Dorel Juvenile Grp. Inc.*,
    No. CV 17–00180 SJO, 2017 WL 7806622 (C.D. Cal. Aug. 9, 2017)..............17, 18

*Hope Acad. Broadway Campus v. White Hat Mgmt., LLC*,
    46 N.E. 3d 665 (Ohio 2015) .................................................................................9

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
    1 F. Supp. 3d 34 (E.D.N.Y. 2014) ........................................................................15

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..............................................................................17

*Klopfenstein v. Fifth Third Bank*,
    No. 1:12cv851, 2015 WL 1468382 (S.D. Ohio Mar. 30, 2015) (Barrett, J.)..........13

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ......................................................................................14

*LaFontaine v. Mitsubishi Motors No. Am., Inc.*,
    No. SACV 16–943 JVS (FFMx), 2017 WL 8220705, at *7 (C.D. Cal. Feb. 23,
    2017) ....................................................................................................................14

*Lamm v. State Street Bank & Tr. Co.*,
    889 F. Supp. 2d 1321 (S.D. Fla. 2012) ..................................................................19

*Lloyd v. Navy Federal Credit Union*,
    No. 17-cv-1280-BAS-RBB, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018) ...........................15

*Lucarell v. Nationwide Mut. Ins. Co.*,
    97 N.E.3d 458 ..................................................................................................10

*McAdam v. State Nat. Ins. Co., Inc.*,
    No. 12cv1333 ..................................................................................................14

*McKinney v. Microsoft Corp.*,
    No. 1:10-cv-354, 2011 WL 13228141 (S.D. Ohio May 12, 2011) (Barrett, J.) ....................12

*MERS, Inc. v. Mosley*,
    2010 WL 2541245 (Ohio App. 2010) ......................................................................9

*Moraine Materials Co. v. Cardinal Operating Co.*,
    No. CA 16782, 1998 WL 785363 (Ohio App. Nov. 13, 1998) ..........................................18

*Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*,
    No. 5:15–cv–2134, 2016 WL 5390412 (N.D. Ohio Sept. 27, 2016) ....................................13

*Moss v. Infinity Ins. Co.*,
    197 F. Supp. 3d 1191 (N.D. Cal. 2016) ..................................................................14

*North v. McNamara*,
    47 F. Supp. 3d 635 (S.D. Ohio 2014) (Barrett, J.) ....................................................12

*O'Neill v. Kemper Ins. Cos.*,
    497 F.3d 578 (6th Cir. 2007) ................................................................................9

*Overby v. Chase Manhattan Bank*,
    351 F. Supp. 2d 219 (S.D.N.Y. 2005) ....................................................................19

*Patrick v. CitiMortgage, Inc.*,
    676 F. App'x 573 (6th Cir. 2017) ............................................................................9

*Pavlovich v. Nat'l City Bank*,
    435 F.3d 560 (6th Cir. 2006) ................................................................................6

*Pereira v. Regions Bank*,
    752 F.3d 1354 (11th Cir. 2014) ............................................................................11

*Pereira v. Regions Bank*,
    918 F. Supp. 2d 1275 (M.D. Fla. 2013), *aff'd*, 752 F.3d 1354 (11th Cir. 2014) ....................11

*Puerto Rico Tel. Co., Inc. v. SprintCom, Inc.*,
   662 F.3d 74 (1st Cir. 2011)................................................................19

*Qassemzadeh v. IBM Poughkeepsie Employees Federal Credit Union*,
   167 A.D.2d 378, 561 N.Y.S.2d 795 (2d Dep't 1990)............................19

*Rhynes v. Stryker Corp.*,
   No. 10–5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011)............14

*Rosell v. Wells Fargo Bank, N.A.*,
   No. 12–cv–06321–JD, 2014 WL 4063050 (N.D. Cal. Aug. 15, 2014)................16

*Salas v. Toyota Motor Sales, U.S.A.*,
   No. CV 15-8629 FMO (Ex), 2016 WL 7486600 (C.D. Cal. Sept. 27, 2016)............14

*Sanderson v. HCA-The Healthcare Co.*,
   447 F.3d 873 (6th Cir. 2006)................................................................18

*Sims Buick-GMC Truck, Inc. v. General Motors LLC*,
   876 F.3d 182 (6th Cir. 2017) (applying Ohio choice-of-law rules)............12

*Strom Eng'g Corp. v. Int'l Fiber Corp.*,
   No. 3:12-cv-35, 2013 WL 5274704 (S.D. Ohio Sept. 18, 2013)............18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................6

*U.S. Bank, N.A. v. Miller*,
   No. CV 12-5632 MMM, 2013 WL 12183652 (C.D. Cal. May 8, 2013)............18

*Valenziano v. Orchard Enters., Inc.*,
   No. CV 10–9754–JFW, 2011 WL 13217770 (C.D. Cal. Jan. 18, 2011) ............16, 17

*Wendy's Int'l, Inc. v. Saverin*,
   337 F. App'x 471 (6th Cir. 2009)........................................................10

*Williams v. Fed. Express Corp.*,
   No. CV 99–06252 MMM ......................................................................19

**Statutes**

Cal. Civ. Code § 1770(a) ......................................................................14

California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 ................... *passim*

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 .............. *passim*

Federal Deposit Insurance Act, 12 U.S.C. §§ 1811-1835a, through section
   1831a(j)(1) ........................................................................................11

National Bank Act, 12 U.S.C. § 1 *et seq.*........................................................................10

Ohio. Rev. Code. § 1109.02(B)-(C)...............................................................................11

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................................17, 18

Fed. R. Civ. P. 12(b)(6)............................................................................................3, 6

**Other Authorities**

https://www.helpwithmybank.gov/get-answers/bank-accounts/overdraft-fees-and-
protection/faq-banking-overdraft-08.html (visited Aug. 8, 2018) ...............................8

I.    **INTRODUCTION**[1]

Plaintiff Troy Howards has brought this putative nationwide class action asserting that Defendant Fifth Third Bank ("Fifth Third") breached the agreements governing his deposit account by charging him non-sufficient funds fees ("NSF Fee") each time a merchant presented a debit for payment against his deposit account and his account lacked sufficient funds to pay the debit. Howards claims, contrary to the rules and regulations governing his account, that Fifth Third is only permitted to charge the NSF Fee the first time the debit is presented, and not each time a payment request is "re-submitted for payment" by the merchant after being previously returned for non-sufficient funds.

Howards asserts three causes of action arising out of this issue:  breach of contract (Count I), violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (the "UCL") (Count II), and violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 (the "CLRA") (Count IIII).  The FAC, (Doc. #17), should be dismissed, with prejudice, for several reasons.

First, Howards' contract claim fails because the unambiguous terms of his contract with Fifth Third permit the fees that he complains about.  That is, Fifth Third was permitted to debit Howard's account each time a merchant requested payment from it.  Focusing on the term "item" in isolation, Howards ignores that he agreed to pay an NSF or overdraft fee for each "occurrence" when a debit was presented to his account and the account lacked sufficient funds to pay the debit. That is precisely what happened here when Howards was charged NSF Fees when he charged

---

[1] This action was initially commenced in the United States District Court for the Central District of California, with Plaintiff filing his original complaint on March 8, 2018 (Doc. #1).  Fifth Third moved to transfer venue to this Court (Doc. #13) and moved to dismiss Plaintiff's original complaint (Doc. #14).  Plaintiff filed a First Amended Class Action Complaint (the "FAC"), (Doc. #17), which Fifth Third also moved to dismiss (Doc. #21).  This motion was fully briefed in the California Court.  (Doc. #21, #24, #25).  On December 7, 2018, Judge Pregerson entered the Order Granting Defendant's Motion to Transfer Venue (Doc. #41), transferring venue to this Court.  Judge Pregerson did not rule on Fifth Third's motion to dismiss the Amended Complaint. At a telephonic status conference with this Court on March 20, 2019, the parties discussed Fifth Third's pending motion to dismiss the FAC (Doc. #21).  Plaintiff's counsel stated that there was recent case law affecting the arguments raised in Fifth Third's Motion and requested an opportunity to file an additional opposition.  Accordingly, the Court directed the parties to file the briefing related to Fifth Third Bank's motion to dismiss the FAC anew.

Uber rides to his account but lacked available funds on deposit to pay for the rides. Fifth Third acted in accordance with the account rules and regulations; it did not breach them.

Second, in an attempt to ratchet up the rhetoric surrounding his unmeritorious contract claim, Howards also asserts derivative claims for violations of the UCL and the CLRA. But those claims are preempted because they seek to regulate the manner in which Fifth Third charges fees. The UCL claim also fails because Ohio law governs Howards' lawsuit, and because Howards has an adequate remedy at law. Further, the CLRA does not apply to claims arising out of debit cards and overdrafts, thereby barring this claim for this additional reason. Finally, Howards has not adequately pleaded a UCL or CLRA claim.

Third, Howards' contract claim is barred by Howards' failure to comply with the error resolution provision of his account agreement. The account rules and regulations required Howards to notify Fifth Third of any discrepancies or errors in his account within 30 days of the issuance of his monthly account statements. He did not allege compliance with this provision, barring his claim as a matter of law.

Finally, Howards raises other claims related to allegations that Fifth Third improperly charged him a $2.75 Out-of-Network ATM usage fee (an "Out-of-Network Fee") for two ATM withdrawals from an allegedly in-network ATM located in a 7-Eleven at 11285 Santa Monica Blvd., Los Angeles, CA. Howards also disputes three overdraft fees he was charged when he allegedly attempted to charge Uber rides to his debit card when his account lacked sufficient funds to pay them. These claims, like his other claims, are barred by his failure to notify Fifth Third of the alleged discrepancy in compliance with the error notification provision.

The Court should therefore dismiss Howards' FAC with prejudice.

## II. BACKGROUND AND SUMMARY OF ALLEGATIONS

### A. THE PARTIES

Fifth Third is an Ohio banking corporation with its principal place of business in Cincinnati, Ohio. (FAC ¶ 11.) Fifth Third provides retail-banking services to consumers, and issues debit cards to its checking-account customers to facilitate electronic payments, purchases,

and ATM withdrawals. (*Id.*) Prior to using these debit cards, Fifth Third's customers agree to Fifth Third's Rules and Regulations, which incorporate Fifth Third's Debit Card Disclosure and Card Agreement. (*Id.* ¶ 13-14; *see also* Ex. A, Decl. of Alice Schloemer, ¶ 11-12 & Ex. A-4, Fifth Third's Rules and Regulations ("R&R"); *id.*, Ex. A-6, Fifth Third's Debit Card Disclosure and Card Agreement ("Debit Card Agreement").[2]) Fifth Third has no retail branches or retail presence in the State of California. (Schloemer Decl. ¶ 5.)

Howards maintains a checking account with Fifth Third, and Fifth Third's Rules and Regulations govern his account. (FAC ¶ 13.)

### B. HOWARDS' INSUFFICIENT-FUNDS TRANSACTIONS

This dispute arises from Howards' complaints about fees Fifth Third allegedly charged him in connection with at least five Uber fares he charged to his Fifth Third account between June and August 2017, despite the account undisputedly having insufficient funds to pay the fares.

For two of the fares, he alleges the bank improperly charged him multiple NSF Fees for the allegedly same transactions. Specifically, on June 19, 2017, Howards took an "Uber ride that cost him $13.16." (FAC ¶ 39.) Howards lacked the funds in his account to pay the fare, and Fifth Third returned the item unpaid due to non-sufficient funds and charged Howards an NSF Fee. (*Id.* ¶ 40.) On June 26, 2017, "the same transaction was submitted for payment again" by Uber, it was returned unpaid due to insufficient funds, and Howards was charged an NSF Fee. (*Id.* ¶ 41.) A week later, he alleges that the "transaction was submitted for payment yet again, and this time Fifth Third paid the transaction and charged a $37" overdraft fee ("OD Fee"). (*Id.* ¶ 43.) Howards

---

[2] Howards refers to these documents as "[Fifth Third's] standardized account agreement." (*See, e.g.*, FAC ¶ 13.) On a Rule 12(b)(6) motion, the Court may consider documents whose contents are alleged in a complaint and whose authenticity is undisputed but that are not physically attached to the pleading. *See, e.g.*, *Berrylane Trading, Inc. v. Transportation Ins. Co.*, 754 F. App'x 370, 370 n.2 (6th Cir. 2018). As described in the Schloemer Declaration, Mr. Howards received the Rules and Regulations then in-effect for his account in October 2016 as part of a "welcome kit" when he opened the account. (Schloemer Decl. ¶ 7 and Ex. A-2). The Rules and Regulations were subsequently amended for February 2017 (*Id.*, Ex. A-3), May 2017 (*Id.*, Ex. A-4), and February 2018 (*Id.*, Ex. A-5). The version in-effect at the time of the disputed transactions was the May 2017 version and, unless context dictates otherwise, that version will be referenced throughout this brief. The Schloemer Declaration was originally filed in the Central District of California and also addressed matters related to venue, which that Court has already adjudicated. Fifth Third is including the Schloemer Declaration and the attachments thereto with this Motion solely for purposes of providing the Court will full and complete copies of the Rules and Regulations and Debit Card Agreement, Howards should have attached the applicable Rules and Regulations and Debit Card Agreement to his Amended Complaint, as they form the basis for his claims. *See* Schloemer Decl. at Ex. A-4 and A-6.

then alleges that he charged another Uber fare of $6.99 to his Fifth Third account and that, (presumably) because funds were not available to cover that fare either, he was charged NSF Fees on August 1, 2017 and August 8, 2017. (*Id.* at ¶ 48).

Howards does not allege that he did not take the Uber rides or did not charge Uber fares to his Fifth Third account, nor does he allege that he was unaware that Uber would be presenting payment to Fifth Third for these rides.  Howards does not deny that for a period of weeks he failed to deposit sufficient funds in his account to pay Uber for the rides he took.  However, Howards contends that Fifth Third was only entitled to charge a single NSF Fee even though the Uber rides were presented for payment multiple times by Uber.

Howards also alleges that he was charged OD Fees in connection with three other Uber rides—taken on June 22, 2017, July 20, 2017, and July 27, 2017—that he claims he charged to his account via debit card. (FAC ¶ 91-94).  Howards alleges that he had not opted-in to Fifth Third's optional Overdraft Coverage for his account.  (*Id.* ¶ 91).  Howards alleges that in the account agreement, Fifth Third agreed it would not "assert a per item overdraft fee for ... one-time debit card items unless you have accepted Overdraft Coverage," and that the bank applies a similar rule for "everyday debit card transactions." (*Id.* ¶ 87).  Howards asserts that his Uber charges were "non-automatic," everyday transactions and that Fifth Third breached the contract by charging OD Fees for those transactions when he had not opted-in to Overdraft Coverage.[3] (*Id.* ¶ 87-94).

## C.  HOWARDS AGREED TO PAY NSF AND OD FEES TO FIFTH THIRD AND TO NOTIFY THE BANK OF ANY DISPUTED FEES

In his contract with Fifth Third, Howards agreed that the bank could debit his checking account when he used his debit card as a form of payment.  (R&R at 3, 13; Debit Card Agt. § 17.)  Howards also agreed that "[Fifth Third] may assess an overdraft/returned item fee whether we pay or return a debit (-)."  (R&R at 15.)  And he further "agree[d] to immediately pay to [Fifth Third] the amount of any overdraft, plus any fees" and that Fifth Third could levy up to a $37 fee for each occurrence thereof.  (*Id.* at 15; FAC ¶ 57.)

[3] Fifth Third disputes many of the factual allegations of the FAC, including the allegation that the Uber transactions at issue led to OD Fees, but accepts the FAC's factual allegations as true solely for purposes of this motion to dismiss.

If Howards disagreed with any charge to his checking account, the R&R required him to provide Fifth Third notice of that disagreement within 30 days:

> Customer agrees to carefully examine and reconcile account statements . . . . Customer agrees that Bank will not be liable if Customer fails to exercise ordinary care in examining their statements.  Customer will notify Bank of any discrepancy with any item, including, but not limited to, deposits, withdrawals, and checks, within thirty (30) days of the statement mailing or made available to customer date.  If notification is not received, Bank will have no liability for such item(s).

(R&R at 6.)

Roughly eight months after he had insufficient funds to cover his Uber purchases, Howards brought the instant complaint.  Prior to filing suit, Howards never informed Fifth Third that he disagreed with the fees Fifth Third charged him for having insufficient funds in his account.  (*See generally* FAC.)

### D.    HOWARDS' OUT-OF-NETWORK FEE CLAIM

Finally, Howards alleges that he agreed to pay a $2.75 Out-of-Network fee in connection with his usage of ATMs outside Fifth Third's "network," but that his usage of ATMs inside the "network" would be fee-free.  (FAC ¶ 16-17.)  He alleges the "network" included over 43,000 Allpoint and other ATMs throughout the country.  (*Id.* ¶ 15.)

Howards alleges that he used, on "multiple occasions," an ATM located in a 7-Eleven store at 11285 Santa Monica Boulevard, Los Angeles, CA, which he alleges was part of Fifth Third's "network."  (*Id.* ¶ 18.)  He alleges that despite this ATM being "in-network," on two occasions, July 7 and December 12, 2017, Fifth Third allegedly charged him a $2.75 Out-of-Network fee for cash withdrawals he made at this specific ATM.  (*Id.* at ¶ 17.)  As with his other claims, Howards never informed Fifth Third that he believed he was incorrectly charged Out-of-Network fees for ATM usage at the ATM in question.  (*See generally* Compl.).

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

"plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  In ruling on a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## IV.  ARGUMENT

### A.  THE COURT SHOULD DISMISS HOWARDS' BREACH OF CONTRACT CLAIM AS TO NSF FEES (COUNT I)

Howards' breach of contract claim fails as to his NSF Fee claim because the fees were contractually authorized. "[C]ontract interpretation is a matter of law when a contract's terms are clear and unambiguous." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006). "[W]hen confronted with an issue of contract interpretation, a court's role is to give effect to the intent of the parties." *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) (quotation omitted).  "To that end, courts should examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract." *Id.* (quotation omitted).  "In addition, courts should look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement." *Id.* (quotation omitted).

Howards alleges that he took an Uber ride on June 19, 2017 that cost $13.16, and "Fifth Third rejected payment of that transaction due to insufficient funds, and charged Plaintiff a $37 NSF Fee." (FAC ¶ 40).  Howards further alleges that Uber resubmitted the payment twice, on June 26, 2017 and again a week later, with Fifth Third charging another NSF Fee on the second try and then paying the item and charging an OD Fee on the third try.  (*Id.* ¶ 41-43).  Howards argues that Fifth Third breached the R&R by charging the second NSF Fee, alleging that the R&R only

permitted Fifth Third to charge a single NSF Fee per "item," no matter how many times an "item" was submitted for payment. His read of the relevant agreements, however, is untenable.

Howards agreed that "any debit to [his] account initiated by [a] party to whom [he] gave [his account] information is deemed authorized" and properly payable. (R&R at 3; Compl. ¶ 51.) His Debit Card Agreement permits the bank to "directly debit or credit the Account for the amount of a Card transaction shown on the sales draft, receipt or other record of the transaction, ... and to handle debit drafts in the same manner we handle checks on the Account." (Ex. A-3 at § 17.) The R&R identifies the consequences if a debit to Howards' account would result in an overdraft to his account:

> These are the ways a debit (-) may be handled when there is not enough money in
> your account:
> • If you choose to enroll, Overdraft Protection may be used to pay the debit (-)
> (using funds from another Fifth Third account).
> • Overdraft Coverage may be applied by the Bank, at the Bank's discretion, to
> pay the debit (-), resulting in a negative balance in your account.
> • Your debit (-) may be returned unpaid
> If you are charged overdraft or returned item fees, the fees will be an additional
> debit (-) to your account and will further increase the negative balance in your
> account if a deposit is not made on time.

(R&R at 15.)

The R&R provides that Fifth Third "may assess a fee for overdrafts created by checks, in-person withdrawals, ATM withdrawals, debit card transactions, or other debits" and that "[it] may assess an overdraft/returned item fee whether [it] pay[s] or return[s] a debit (-)." (*Id.*)

These provisions establish that when a party such as Uber submits a debit to a customer's account and there are insufficient funds in the account to pay it, Fifth Third can either "pay" the debit using Overdraft Coverage or can "return[]" the debit "unpaid." (R&R at 15.) Howards agreed that the bank may assess an NSF or OD Fee "whether [it] pay[s] or return[s] a debit (-)." (*Id.*) The amount of the NSF or OD Fee is defined as: "$37/item for each occurrence." (FAC ¶ 57.) Thus, each time Uber submitted the $13.16 fare for payment and Howards' account lacked funds to pay it, the submission was an "occurrence" and a fee was charged.

7

Despite these provisions, Howards argues that "for a given transaction, the Bank may pay or return it, but it cannot do both for the same transaction, and it cannot do the same thing more than once." (FAC ¶ 63). His argument is founded on an unsupported legal conclusion that "'checks' cannot be returned and re-processed multiple times..." (*Id. ¶ 65*). To the contrary, returned items, including checks, can indeed be re-presented for payment. The agreement contemplates it (R&R at 23) and, as the Office of the Comptroller of the Currency ("OCC") acknowledges, "[g]enerally, a bank will redeposit the check twice when there are insufficient funds in your account… However, there are no laws that determine how many times a check may be resubmitted." https://www.helpwithmybank.gov/get-answers/bank-accounts/overdraft-fees-and-protection/faq-banking-overdraft-08.html (visited Aug. 8, 2018).

Despite Howards' attempts to muddy this issue, the basic point is that under the parties' agreement and pursuant to applicable law, a single "item" can be presented for payment more than once if it is returned unpayable due to non-sufficient funds. The R&R Fee Schedule defines the NSF Fee /OD Fee as being: "$37/item *for each occurrence*." (FAC ¶ 57) (emphasis added). The contractual triggering event for charging a fee is when a "debit (-)" is presented and "there is not enough money in your account" to honor the debit. (R&R at 15). Reading these provisions together, the only plausible interpretation is that an NSF Fee is charged for *each* "occurrence" of a debit being presented to Fifth Third for payment from Howards' account if his account lacks sufficient funds at each point in time when the debit is presented for payment, even if the debit is a second or third attempt to obtain payment of the same charge.

By focusing improperly on the word "item" in isolation, Howards' interpretation of the R&R would, among other things, read the "for each occurrence" language out of the R&R. If Howards is right, and only one NSF Fee can be charged for a single "item" no matter how many times it is presented for payment, then the words "for each occurrence" are rendered surplusage because there could never be more than one "occurrence" of an NSF Fee or OD Fee for a single "item." But under Ohio law, a court must "give meaning to every paragraph, clause, phrase, and

word, omitting nothing as meaningless, or surplusage" in a contract. *Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp.*, 16 F.3d 684, 686 (6th Cir. 1994).

In the end, Howards' real complaint about NSF Fees is his belief that they are "abusive" or unfair. (FAC ¶ 34). However, Howards' philosophical beliefs about the fairness of NSF Fees are irrelevant to a contract claim. Under Ohio law, "[a] contract does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto." *O'Neill v. Kemper Ins. Cos.*, 497 F.3d 578, 582 (6th Cir. 2007). "It is not the responsibility or function of [a] court to rewrite the parties' contract in order to provide for a more equitable result." *Hope Acad. Broadway Campus v. White Hat Mgmt., LLC*, 46 N.E. 3d 665, 675 (Ohio 2015). His contract claim should be dismissed with prejudice.

### B. COUNT I SHOULD ALSO BE DISMISSED BECAUSE OHIO LAW DOES NOT RECOGNIZE A STANDALONE CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Howards alleges that Fifth Third breached the implied covenant of good faith and fair dealing by using its "discretion" to charge OON Fees for in-network ATMs and to "charge OD Fees on non-automatic transactions paid for with a debit card...," as well as by "charg[ing] more than one NSF [fee] on a given transaction," (FAC ¶¶ 119-121). These claims must be dismissed because there is no cognizable bad faith claim in Ohio absent a breach of an express contractual provision.

As the Sixth Circuit succinctly stated, "Ohio law recognizes only a breach of contract claim; it does not recognize a free-standing or independent claim for breach of the covenants of good faith and fair dealing." *Patrick v. CitiMortgage, Inc.*, 676 F. App'x 573, 577 (6th Cir. 2017); *see also MERS, Inc. v. Mosley*, 2010 WL 2541245, at *11 (Ohio App. 2010) ("there is no claim for breach of the implied covenants of good faith and fair dealing independent of a breach of contract action."). In particular, under Ohio law, "[a] party to a contract does not breach the implied duty of good faith and fair dealing by seeking to enforce the agreement as written or by acting in accordance with its express terms, nor can there be a breach of the implied duty unless a

specific obligation imposed by the contract is not met." *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, *syl.* ¶ 3 (Ohio 2018).

Here, Howards' bad faith claim hinges on his complaints about Fifth Third exercising its discretion to charge him fees it is permitted to charge under the parties' agreement. If Fifth Third has "discretion" to charge the fees under the agreement, as Howards alleges, then Fifth Third's act of charging the fees is not a breach and cannot form the basis of a bad faith claim as a matter of law. *See Wendy's Int'l, Inc. v. Saverin,* 337 F. App'x 471, 477 (6th Cir. 2009) (holding that "the implied duty of good faith cannot be breached by acting as allowed by the specific terms of the contract."). Similarly, for the reasons stated *supra*, Fifth Third is permitted by the terms of the agreement to charge NSF fees for debits presented for payment, even if "resubmitted." Accordingly, charging "more than one NSF fee on a given transaction" is not a breach and cannot form the basis of a claim for breach of the implied covenant of good faith and fair dealing. The Court should dismiss Count I of Howards' FAC for this additional reason.

## C. THE COURT SHOULD DISMISS HOWARDS' UCL AND CLRA CLAIMS (COUNTS II AND III).

The Court should dismiss Howards' UCL and CLRA claims. First, these claims are preempted. Second, because Ohio law governs Howards' lawsuit, and also because he has an adequate remedy at law, he cannot maintain his UCL claim. Third, the CLRA does not apply to claims arising out of debit cards and overdrafts, such that both the CLRA claim and the UCL claim based on the CLRA fail. Finally, Howards has not adequately pleaded a UCL or CLRA claim.

### 1. Howards' UCL And CLRA Claims Are Preempted.

Counts II and III are preempted because they attempt to regulate the business of banking—specifically, Fifth Third's ability to charge fees. The National Bank Act ("NBA"), 12 U.S.C. § 1 *et seq.* preempts any state law that "prevent[s] or significantly interfere[s] with the national bank's exercise of its powers." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 722 (9th Cir. 2012) (quoting *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996)).

10

National banks have "all such incidental powers as shall be necessary to carry on the business of banking." *Id.* at 723 (quoting 12 U.S.C. § 24). This includes the power to "charge customers non-interest charges and fees, such as . . . overdraft fees . . . ." *Id.* at 724 (citing 12 C.F.R. § 7.4002(a)). "[T]he establishment of non-interest charges and fees, their amounts, and *the method of calculating them* are business decisions made by each bank, in its discretion, according to sound banking principles." *Id.* (emphasis in original) (quoting 12 C.F.R. § 7.4002(b)(2)). Thus, the NBA preempts UCL and CLRA claims where they would significantly impair a national bank's power to charge non-interest charges and fees, such as NSF, overdraft, or ATM fees. *Id.* at 725.

The Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. §§ 1811-1835a, through section 1831a(j)(1), extends to state-chartered banks the preemptive force of the NBA and OCC regulations. *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2013 WL 5781608, *9 (N.D. Cal. Oct. 25, 2013) ("Insofar as Plaintiffs' UCL claims would be preempted by the [NBA], they are preempted by the FDIA."); *see also Pereira v. Regions Bank*, 752 F.3d 1354, 1357 (11th Cir. 2014) (because NBA preempted a Florida statute, the FDIA also preempted it with respect to state-chartered banks). Thus, the FDIA preempts the imposition of California law on out-of-state state banks to the same extent that they are preempted as to national banks. *Hawthorne*, 2013 WL 5781608 at *9; *see also Pereira v. Regions Bank*, 918 F. Supp. 2d 1275, 1281-82 (M.D. Fla. 2013), *aff'd*, 752 F.3d 1354 (11th Cir. 2014).

Fifth Third is an Ohio-chartered bank. The FDIA extends to Fifth Third the preemptive force of the NBA and OCC regulations. Fifth Third may "exercise all powers, perform all acts, and provide all services that are…a part of or incidental to the business of banking" and "that are permitted for national banks." Ohio. Rev. Code. § 1109.02(B)-(C).

Howards' statutory claims are an attempt to regulate the manner in which Fifth Third charges fees, and thus improperly interfere with Fifth Third's exercise of its powers. (*See* FAC ¶¶ 127 (alleging UCL violation for charging certain fees), 132 (alleging UCL violation for paying improper, abusive, and/or unconscionable fees), 144 (alleging CLRA violation for charging certain fees)). Indeed, the first paragraph of Howards' Prayer for Relief asks the Court to declare that

"[Fifth Third's] OON Fee, NSF Fee, and OD Fee *policies and practices* to be wrongful, unfair and unconscionable"). Such interference is preempted by the FDIA and thus those claims should be dismissed. *See Gutierrez*, 704 F.3d at 725 ("We hold that a 'good faith' limitation applied through [the UCL] is preempted when applied in a manner that prevents or significantly interferes with a national bank's... power ....").

### 2. The Parties' Choice-Of-Law Provision Bars Howards' UCL Claim.

Howards' UCL claim is also barred by the parties' choice-of-law provision. Howards and Fifth Third agreed that "[t]he laws of the United States and the State of Ohio govern th[eir] agreement . . . ." (R&R at 20.) Because this action arises out of and relates to the R&R, Ohio law controls and the Court should dismiss Howards' UCL claim.

In diversity actions, federal courts apply the forum state's choice-of-law rules to evaluate the enforceability of a contractual choice-of-law provision. *See, e.g.*, *McKinney v. Microsoft Corp.*, No. 1:10-cv-354, 2011 WL 13228141, at *5 (S.D. Ohio May 12, 2011) (Barrett, J.). "However, when interpreting contracts in a diversity action, the Sixth Circuit has also stated that courts should 'generally enforce the parties' contractual choice of…governing law.'" *Id.* (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007)). Ohio law[4] "enforces a contract's choice-of-law provision unless (1) the chosen State has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice or (2) its application would contradict a fundamental policy of another State with a materially greater interest in the issue." *Sims Buick-GMC Truck, Inc. v. General Motors LLC*, 876 F.3d 182, 185 (6th Cir. 2017) (applying Ohio choice-of-law rules). Neither exception applies here. First, Ohio has a substantial relationship to the parties because Fifth Third is incorporated and has its headquarters in Ohio. (FAC ¶ 11.); *see, e.g.*, *Sims Buick-GMC Truck, Inc.*, 876 F.3d at 185-86 (substantial relationship test met where one of the parties maintained its

---

[4] Because this action was transferred from the district court for the central district of California to this Court pursuant to a forum-selection clause, the transfer of venue "will not carry with it the original venue's [*i.e.*, California's] choice-of-law rules." *North v. McNamara*, 47 F. Supp. 3d 635, 647 (S.D. Ohio 2014) (Barrett, J.) (quoting *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 64 (2013)). Consequently, Ohio choice-of-law rules apply here.

headquarters in the chosen state).  Second, California does not have a materially greater interest than Ohio because Fifth Third is an Ohio banking corporation with its principal place of business and corporate headquarters in Ohio.  (FAC ¶ 11.)  Because California has not greater material interest in this action than Ohio, there is no reason to consider whether the choice-of-law clause here contravenes California's fundamental policy, to the extent there is any such fundamental policy relevant here (which there is not).

Ohio courts have dismissed claims under other states' consumer protection statutes, including under California's UCL, where the parties agreed that Ohio law would govern their agreement. *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, No. 5:15–cv–2134, 2016 WL 5390412, at *11 (N.D. Ohio Sept. 27, 2016) ("The Court agrees that the parties' selection of Ohio law as their contractual choice of law requires dismissal of claim seven, brought solely under California statutory law [*i.e.*, UCL], because the allegations in claim seven relate to the performance of the parties' contractual duties."). *See also Klopfenstein v. Fifth Third Bank*, No. 1:12cv851, 2015 WL 1468382, at *9 (S.D. Ohio Mar. 30, 2015) (Barrett, J.) (holding that claims under Illinois and Kentucky consumer protection statutes were barred by an Ohio choice-of-law clause). Even courts in the Ninth Circuit have dismissed claims brought under the UCL when California law does not govern the parties' agreement.  *See, e.g.*, *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 600 F. App'x 502, 504 (9th Cir. 2015) ("District court did not err in enforcing choice-of-law provision calling for New Jersey law to apply, thus, dismissing the UCL claims."); *Aliya Medcare Finance, LLC v. Nickell*, No. CV 14–07806 MMM (Ex), 2015 WL 4163088, at *17 (C.D. Cal. July 9, 2015) ("Aliya and third party defendants next argue, and the court agrees, that to the extent CTB's trademark and unfair competition claims are based on state law, they fail because the agreements are governed by Nevada law.").  This Court should dismiss Howards' UCL claim because it is barred by the parties' Ohio choice-of-law clause.

### 3.    Howards Has An Adequate Remedy At Law.

Howards' UCL claim also fails because his contract claim provides an adequate remedy at law.  The UCL is an equitable statute because the only remedies available are restitution and

injunctive relief. *See, e.g.*, *Salas v. Toyota Motor Sales, U.S.A.*, No. CV 15-8629 FMO (Ex), 2016 WL 7486600, at *13 (C.D. Cal. Sept. 27, 2016) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)); *LaFontaine v. Mitsubishi Motors No. Am., Inc.*, No. SACV 16–943 JVS (FFMx), 2017 WL 8220705, at *7 (C.D. Cal. Feb. 23, 2017). "A plaintiff seeking equitable relief . . . must demonstrate that he does not have an adequate remedy at law." *LaFontaine*, 2017 WL 8220705, at *7; *see also Salas*, 2016 WL 7486600, at *13 (collecting cases).

Howards has not alleged that he lacks an adequate remedy at law. This is because he cannot do so. "Where, as here, a plaintiff can seek money damages if she prevails on claims for breach of contract or breach of the implied covenant of good faith and fair dealing, she has an adequate remedy at law." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016); *Gardner v. Safeco Ins. Co. of Am.*, No. 14–cv–02024–JCS, 2014 WL 2568895, at *7 (N.D. Cal. June 6, 2014) (same); *McAdam v. State Nat. Ins. Co., Inc.*, No. 12cv1333 BTM(MDD), 2012 WL 4364655, at *3 (S.D. Cal. Sept. 24, 2012) (same). "Such is the case even if all of [Howards'] non-UCL claims ultimately fail." *Moss*, 197 F. Supp. 3d at 1203; *see also Rhynes v. Stryker Corp.*, No. 10–5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) (same). Accordingly, the Court should dismiss Howard's UCL claim for this additional reason. *See, e.g.*, *LaFontaine*, 2017 WL 8220705, at *7 (dismissing UCL claim); *Salas*, 2016 WL 7486600, at *14 (same).

> **4.    The CLRA Does Not Apply To Claims Arising Out Of Checking Accounts, Debit Cards, And Overdrafts.**

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The CLRA's enactment "followed findings by the National Advisory Commission on Civil Disorders," which was "[i]nvestigating the causes of recent violence in low-income urban areas," that "low-income persons were the most common victims of deceptive sales practices," were "the least likely to seek legal help," and "[f]ew options and typically poor credit histories induced these consumers to buy goods and services from even the most disreputable merchant." *Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th

224, 54 Cal. Rptr. 3d 91, 94-95 (Cal. Ct. App. 2007). The California Legislature "adopted the CLRA to mitigate these social and economic problems." *Id.* As a result, the CLRA applies "to transactions involving the actual or contemplated sale or lease of goods and services." *Id.* at 96.

Here, Howards attempts to expand the scope of the CLRA well beyond its recognized limits. Howards alleges that "[Fifth Third's] provision of debit cards, offering of ATM services, and rejection of transactions for which there are insufficient funds" are "services" under the CLRA. (FAC ¶ 142.) However, the CLRA does not apply to claims arising out of checking accounts fees such as debit cards and ATM, overdraft, and NSF Fees.[5] "The CLRA does not apply to claims involving debit cards or overdrafts associated with those cards, separate and apart from any transaction involving, or intended to result in, a sale or lease of goods or services." *Lloyd v. Navy Federal Credit Union*, No. 17-cv-1280-BAS-RBB, 2018 WL 1757609, at *20 (S.D. Cal. Apr. 12, 2018); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 957 (N.D. Cal. 2009); *see also In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1326-27 (S.D. Fla. 2010); *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 55 (E.D.N.Y. 2014).

This is because "goods" and "services"—defined terms in the statute—do not include money, credit or the extension of credit. *See Lloyd*, 2018 WL 1757609 at *20 (debit cards and overdrafts are not a service under CLRA); *Gutierrez*, 622 F. Supp. 2d at 957 (bank's actions relating to overdrafts are not a service under CLRA); *In re HSBC Bank, USA, N.A.*, 1 F. Supp. 3d at 55 (same); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1327 (same); *Berry*, 54 Cal. Rptr. 3d at 96-97 (credit transactions, separate and apart from any sale or lease of goods or services, are not covered under CLRA). These holdings are consistent with the fact that the California Legislature considered "money" and "credit" to be different from goods or services and excluded any reference to money and credit from the CLRA. *See e.g.*, *Berry*, 54 Cal. Rptr. 3d at 94-96; *In re Checking Account Litig.*, 694 F. Supp. 2d at 1327. Indeed, the California Legislature

---

[5] Howards also fails to identify the prohibited practice in which Fifth Third allegedly engaged. *See Lloyd*, 2018 WL 1757609 at *18 (plaintiff must identify prohibited practice under the CLRA that defendant purportedly engaged in).

"unmistakably narrowed the [CLRA's] scope by limiting liability to transactions involving the actual or contemplated sale or lease of goods and services." *Berry*, 54 Cal. Rptr. 3d at 96.

Accordingly, this Court should dismiss Count III for this additional reason.

        **5.**        **Howards' Unlawful UCL Claim Fails Because His CLRA Claim Fails.**

Similarly, the Court should dismiss Count II alleging a violation of the unlawful prong of the UCL because Howards' CLRA claim – the predicate for his claim of an unlawful violation of the UCL - fails as set forth above.  (FAC ¶ 137).  Thus, because Howards' CLRA claim fails, so too much his unlawful business act claim under the UCL.  Howards alleges no other basis for that claim.  *See Dillon v. NBCUniversal Media LLC*, No. CV 12–09728 SJO (AJWx), 2013 WL 3581938, *8 (C.D. Cal. June 18, 2013).

        **6.**        **Howards Fails To Adequately Plead His UCL And CLRA Claims.**

Even if an UCL or CLRA claim were proper – which they are not for the reasons set forth above, the Court should still dismiss Howards' UCL and CLRA claims because they are simply repackaged contract claims which do not give rise to UCL or CLRA violations.  Moreover, Howards has not pleaded any misrepresentation with particularity.

Howards alleges no facts or circumstances to support his UCL and CLRA claims beyond the contract.  (*E.g.,* FAC ¶¶ 133, 145.).  But, a "breach of contract claim cannot form the basis for a UCL claim without additional unlawful, unfair, or fraudulent conduct[.]"  *Conder v. Home Savings of Am.*, 680 F. Supp. 2d 1168, 1176 (C.D. Cal. 2010).  "Otherwise, every garden-variety breach of contract claim . . . would double as a UCL claim."  *Rosell v. Wells Fargo Bank, N.A.*, No. 12–cv–06321–JD, 2014 WL 4063050, at *6 (N.D. Cal. Aug. 15, 2014).  And, while "[a]n act that breaches a contract may also breach the UCL," this is only true "when the act is unfair, unlawful or fraudulent *for some additional reason*."  *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) (emphasis added); *see also Valenziano v. Orchard Enters., Inc.*, No. CV 10–9754–JFW (PLAx), 2011 WL 13217770, at *3 (C.D. Cal. Jan. 18, 2011) (same); *Conder*, 680 F. Supp. 2d at 1176 (same).  For instance, in *Valenziano,* the plaintiff alleged the defendant violated the UCL by failing to pay amounts due on a contract.  The court dismissed,

finding that the "[p]laintiff ha[d] not pled that [defendant's] breaches of contract were independently unlawful, unfair, or fraudulent, merely that [defendant] did not pay Plaintiff the amounts due . . . ." 2011 WL 13217770 at *3; *see also Conder*, 60 F. Supp. 2d at 1176 ("a breach of contract claim cannot form the basis for a UCL claim without additional unlawful, unfair, or fraudulent conduct").

Similarly, a failure to fulfill a contractual promise alone does not become actionable under the CLRA. *Baba v. Hewlett-Packard Co.*, No. C 09–05946 RS, 2010 WL 2486353, at *4 (N.D. Cal. June 16, 2010) (dismissing CLRA claim because "as to any affirmative misrepresentations, plaintiffs allege little more than a breach of contract"). And "a breach of the implied covenant of good faith and fair dealing, is not itself an unlawful act for purposes of the UCL." *Boland, Inc.*, 685 F. Supp. 2d at 1110.

Howards has failed to make any plausible factual allegations to support that the fees allegedly charged by Fifth Third are "unfair, unlawful, or fraudulent for some additional reason" or "unfair methods of competition and unfair or deceptive acts or practices" beyond Howards' argument that charging the fees allegedly breached the contract. *Boland*, 685 F. Supp. 2d at 1110; *Baba*, 2010 WL 2486353 at *3-4. Thus, the Court should dismiss Howards' UCL and CLRA claims.

Additionally, Howards has also failed to plead any misrepresentation with particularity, as is required under Fed. R. Civ. P. 9(b) for the fraud-based UCL or CLRA claim. *Henryhand v. Dorel Juvenile Grp. Inc.*, No. CV 17–00180 SJO (AGRx), 2017 WL 7806622, at *6 (C.D. Cal. Aug. 9, 2017); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Howards only alleges that Fifth Third violated the UCL's fraud prong "when it affirmatively and knowingly misrepresented its OON Fee, NSF Fee, and OD Fee practices." (FAC ¶ 133.) Similarly, Howards alleges that Fifth Third violated the CLRA when it "made material misrepresentations and/or omissions concerning each of these practices upon which Plaintiff relied." (*Id.* ¶ 145.). Yet, to satisfy Rule 9(b), a plaintiff must "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about the purportedly fraudulent conduct, and

why it is false." *Henryhand*, 2017 WL 7806622, at *6 (dismissing fraud-based UCL and CRLA claims because plaintiff failed to plead facts supporting an alleged affirmative misrepresentation); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("[A]t a minimum, Rule 9(b) requires that the plaintiff specify the who, what, when, where, and how of the alleged fraud."). Howards' conclusory assertions fall short of meeting this heightened pleading burden because Howards is improperly seeking to re-package his contract claim as fraud-based claims. *U.S. Bank, N.A. v. Miller*, No. CV 12-5632 MMM (MANx), 2013 WL 12183652, at *8 (C.D. Cal. May 8, 2013).

### D. THE COURT SHOULD DISMISS COUNT I DUE TO HOWARDS' FAILURE TO TIMELY OBJECT TO THE FEES ABOUT WHICH HE COMPLAINS

Finally, even assuming that Howards could maintain a claim for breach of contract based on the allegations in the FAC, his claims are foreclosed under the express terms of the parties' agreement. In the R&R, Howards agreed to "notify [Fifth Third] of *any discrepancy with any item*" on his Fifth Third account statements "within thirty (30) days" of having access thereto. (R&R at 6) (emphasis added)). Howards further agreed that "[i]f notification is not received, [Fifth Third] will have *no liability* for such item(s)." (*Id.* (emphasis added)).

Where, as here, a contract requires a party to provide notice when it believes another party has improperly charged its account, the notice provision operates as condition precedent under Ohio law. *See Moraine Materials Co. v. Cardinal Operating Co.*, No. CA 16782, 1998 WL 785363, *2 (Ohio App. Nov. 13, 1998) ("The notice provision in the contracts operated as a condition precedent to [plaintiff]'s right to claim any damages from default by the appellees."); *Golihue v. Nat'l City Bank*, 969 N.E.2d 1233, 1237–38 (Ohio App. 2011) (finding that "account agreement establishe[d] a condition precedent" where it "require[d] a depositor to notify the bank of unauthorized signatures within 60 days after a statement was made available"); *Strom Eng'g Corp. v. Int'l Fiber Corp.*, No. 3:12-cv-35, 2013 WL 5274704, *6 (S.D. Ohio Sept. 18, 2013) (enforcing notification provision under which plaintiff "agree[d] that if it fail[ed] to provide written

notice of any disputed invoice items within thirty (30) calendar days after receipt thereof, [plaintiff] acknowledge[d] the item and waives its right to challenge the validity of the items").

Other jurisdictions are in accord. *See, e.g.*, *Lamm v. State Street Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012) ("Plaintiff['s] failure to comply with the notice requirements contained in the custody agreements is also fatal to his breach of contract claims."); *Overby v. Chase Manhattan Bank*, 351 F. Supp. 2d 219, 225 (S.D.N.Y. 2005) (barring banking claims against bank due to plaintiff's failure to provide contractually required notice to bank within 30-60 days of receiving the account statement); *Puerto Rico Tel. Co., Inc. v. SprintCom, Inc.*, 662 F.3d 74, 96 (1st Cir. 2011) ("[U]nder the terms of the Waiver Provision, a billed party's failure to object to an invoice in accordance with the procedures set forth in such provision constitutes a waiver of that party's right to challenge the invoice."); *Qassemzadeh v. IBM Poughkeepsie Employees Federal Credit Union*, 167 A.D.2d 378, 561 N.Y.S.2d 795, 796 (2d Dep't 1990) (failure to provide bank timely notice of alleged unauthorized transaction barred claim); *cf. Williams v. Fed. Express Corp.*, No. CV 99–06252 MMM BQRX, 1999 WL 1276558, at *5 (C.D. Cal. Oct. 6, 1999) ("The contractual provision requiring timely written notice of a claim is valid, and [plaintiff's] failure to comply with the provision prevents him from collecting damages for the misdelivery of his package."); *Camacho v. JPMorgan Chase Bank,* No. 5:14-cv-04048, 2015 WL 5262022, *3-4 (N.D. Cal. Sept. 9, 2015) (dismissing EFTA claim due to customer's failure to comply with notice requirements in his account agreement and under the EFTA).

Here, Howards waived his breach of contract claim (including his claim for breach the implied covenant of good faith and fair dealing) by failing to provide Fifth Third notice as required by the account R&Rs. Howards does not allege compliance with the notice requirement, nor does the FAC allege compliance with all conditions precedent. Accordingly, this Court should dismiss the Complaint for failure to comply with the notice requirement. *See Au Rustproofing Ctr., Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1985) ("It is well established under Ohio contract law that a party must comply with all express conditions to be performed in case of breach before it can claim damages by reason of the breach.").

V.    **CONCLUSION**

For the foregoing reasons, Fifth Third respectfully requests that the Court grant Fifth Third's motion to dismiss each and every one of Plaintiff's three causes of action in their entirety and with prejudice.

Dated: April 3, 2019                    Respectfully submitted,

                                        BAKER & HOSTETLER LLP

                                        */s/ WHHawkins*
                                        William H. Hawkins II (0003865)
                                        (*Trial Attorney*)
                                        Email:       whawkins@bakerlaw.com
                                        312 Walnut Street, Suite 3200
                                        Cincinnati, OH  45202-4074
                                        513.929.3481 / Fax 513.929.0303

                                        Guenther K. Fanter (0075686)
                                        Email:  kfanter@bakerlaw.com
                                        Key Tower 127 Public Square Suite 2000
                                        Cleveland, OH  44114-1214
                                        216.861.7096 / Fax 216.696.0740

                                        Julie Singer Brady (FL 0389315) (*phv*)
                                        Email:       jsingerbrady@bakerlaw.com
                                        SunTrust Center, Suite 2300
                                        200 South Orange Avenue
                                        Orlando, FL  32801-3432
                                        407.649.4000 / Fax 407.841.0168

                                        *Counsel for Defendant, Fifth Third Bank*

## CERTIFICATE OF SERVICE

I certify that on April 3, 2019, a true and authentic copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to the following:

Stuart E. Scott
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (FAX)
sscott@spanglaw.com

Jeffrey D. Kaliel
Sophia G. Gold
jkaliel@kalielpllc.com
sgold@kalielpllc.com
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783

*/s/WHHawkins*
*Counsel for Defendant, Fifth Third Bank*