IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| TROY HOWARDS, individually and on behalf of all others similarly situated, | : Case No. 1:18-cv-869 |
| Plaintiff, | : Judge Michael R. Barrett |
| v. | : **OPINION & ORDER** |
| FIFTH THIRD BANK, | : |
| Defendant. | : |

This matter is before the Court on Defendant Fifth Third Bank's Motion to Dismiss (pursuant to Fed. R. Civ. P. 12(b)(6)) Plaintiff's First Amended Class Action Complaint. (Doc. 49). Plaintiff has filed a memorandum in opposition (Doc. 57)[1], to which Defendant has replied (Doc. 68).[2]

As an overview, the First Amended Class Action Complaint ("FAC"), filed on July 2, 2018, challenges three different account fees that Defendant Fifth Third Bank ("Fifth Third") assesses to accountholders. (Doc. 17). Plaintiff claims that this conduct: breaches his contract with Fifth Third as well as the implied covenant of good faith and fair dealing (First Claim for Relief); violates California's Unfair Competition Law ("UCL"), codified at Ca. Bus. & Prof. Code § 17200 *et seq.* (Second Claim for Relief); and violates California's Consumers Legal Remedies Act ("CLRA"), codified at Cal. Civ. Code § 1750 *et seq.* (Third Claim for Relief). The account fees at issue are out-of-network ("OON")

---

[1] Because the Court does not deem it essential to the fair resolution of this matter, Plaintiff's request for oral argument is denied. *See* S.D. Ohio Civ. R. 7.1(b)(2).

[2] Both Plaintiff (Docs. 70–72, 74, 75, 77, 78, 81–84, 87, 90, 92, 94) and Defendant (Docs. 69, 96) have filed notices of supplemental authority. In some instances, opponent responses were filed. (*See* Docs. 73, 76, 86, 89, 91, 93, 98).

fees assessed on in-network ATM withdrawal transactions, multiple non-sufficient funds ("NSF") fees assessed on the same transaction, and overdraft ("OD") fees assessed on one-time debit card transactions.[3]

Plaintiff has since "elect[ed] not to oppose [Fifth Third's] Motion as to his CLRA claim, agreeing to its dismissal." (Doc. 57 PAGEID 1081 n.1). Additionally, Plaintiff has agreed "not to further pursue a claim challenging [Fifth Third's] assessment of the challenged OON Fees on behalf of the proposed OON Fees classes[.]" (Stipulation Regarding Plaintiff's Agreement to Drop Allegations Pertaining to Out of Network ATM Fees from First Amended Complaint, Doc. 97 PAGEID 1738). To inform the Court's analysis, the parties have stipulated to dismissal of Plaintiff's Third Claim for Relief (in its entirety) and that portion of Plaintiff's First and Second Claims for Relief pertaining to OON fees (only). (*Id.* PAGEID 1739). Thus, the Court will proceed to decide Fifth Third's Motion as to the two remaining theories of liability[4] alleged in Plaintiff's First and Second Claims for Relief. (*See id.*).

---

[3] As Plaintiff explains, NSF fees—called "returned item" fees (*see* Doc. 68 PAGEID 1116 n.1) by Fifth Third—differ from OD fees. A returned item fee is assessed when a bank <u>rejects</u> an attempted transaction. In contrast, an OD fee is assessed when a bank <u>authorizes and pays</u> a transaction even though there are insufficient funds in an accountholder's account. When a bank pays an overdraft, it advances funds on behalf of the accountholder in exchange for the OD fee it assesses. (Doc. 57 PAGEID 1079).

[4] The remaining proposed classes are:

> All [Fifth Third Bank] checking account holders in the United States who, during the applicable statute of limitations, were charged multiple NSF Fees on the same transaction (the "NSF Class").
>
> All [Fifth Third Bank] checking account holders in California who, during the applicable statute of limitations, were charged multiple NSF Fees on the same transaction (the "California NSF Subclass").
>
> All [Fifth Third Bank] checking account holders in the United States who, during the applicable statute of limitations, were not opted in to Overdraft Coverage and were charged OD or NSF Fees on transactions that were not automatic debits or were paid for with a debit card (the "Opted Out Class").

2

I. **BACKGROUND**[5]

Plaintiff Troy Howards, a California resident, maintains a Fifth Third checking account. (FAC, Doc. 17 (¶¶ 10, 13)). Fifth Third's Deposit Account Rules and Regulations ("R&R") govern his account. (*Id.* (¶ 13)[6]). Fifth Third issues debit cards to its checking account customers, giving them electronic access to their account for purchases, payments, and ATM withdrawals. (*Id.* (¶¶ 11, 14)). As noted, this case involves debit card transactions.

---

> All [Fifth Third Bank] checking account holders in California who, during the applicable statute of limitations, were not opted in to Overdraft Coverage and were charged OD or NSF Fees on transactions that were not automatic debits or were paid for with a debit card (the "California Opted Out Subclass").

(FAC, Doc. 17 (¶ 96)).

[5] Fifth Third's Motion is brought pursuant to Fed. R. Civ. P. 12(b)(6). For purposes of deciding it, therefore, the Court accepts as true the factual allegations made by Plaintiff in the FAC. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[6] The Deposit Account R&R underpins Plaintiff's breach of contract claim (and his derivative claim for breach of the implied covenant of good faith and fair dealing). Surprisingly, though, Plaintiff did not attach any version—either in effect when he opened his account, as amended in February 2017, as amended in May 2017, or as amended in February 2018—of the R&R as an exhibit to the FAC. Fifth Third, however, attached all four versions to the Declaration of Alice Schloemer, its Vice President and Senior Product Development Manager, which was filed in support of its Rule 12(b)(6) Motion. (*See* Docs. 49-1 (¶ 2); (¶ 7) & Exh. A-2 (PAGEID 893–937) (May 2016); (¶ 8) & Exh. A-3 (PAGEID 938–982) (February 2017); (¶ 9) & Exh. A-4 (PAGEID 983–1018) (May 2017); (¶ 10) & Exh. A-5 (PAGEID 1019–1059) (February 2018)).

Fifth Third's Debit Card Disclosure and Card Agreement ("Debit Card Agreement") also was attached to the Schloemer Declaration. (Doc. 49-1 (¶ 12) & Exh. A-6 (PAGEID 1060–1062)). A Deposit Account holder must agree to the Debit Card Agreement as a condition of using his debit card. (*Id.*).

Plaintiff sometimes refers to the Deposit Account R&R and the Debit Card Agreement collectively as Fifth Third's standard account "agreement" or standard account "documents."

For purposes of deciding this Motion, the Court will cite to the May 2017 Deposit Account R&R, which presumably was the version in effect at the time Fifth Third assessed the NSF and OD fees in dispute. (*But cf.* Doc. 57 PAGEID 1082 n.3 ("[Schloemer] does not state whether the new agreements are actually delivered to [ ] accountholders, how they are notified, or whether they were binding. In the absence of a factual record, which [Fifth Third Bank] may not create via its Motion, the Court should not assume that later versions of the Rules and Regulations are binding on Howards at this stage.")).

3

**Fees charged to Plaintiff's checking account.** On June 19, 2017, Plaintiff took an Uber ride that cost $13.16. (*Id.* (¶ 39)). Fifth Third rejected payment of this transaction because Plaintiff had insufficient funds in his account and charged Plaintiff a $37 NSF fee. (*Id.* (¶ 40)). One week later, on June 26, 2017, this same transaction was submitted for payment again, rejected again for insufficient funds, and Plaintiff was charged another $37 NSF fee. (*Id.* (¶ 41)). This event was listed as a "Retry Payment" on Plaintiff's account statement. (*Id.* (¶ 42)). The same transaction was submitted for payment a third time. (*Id.* (¶ 43)). Unlike before, though, Fifth Third paid the transaction and instead charged Plaintiff a $37 OD fee. (*Id.*). This event, too, was listed as a "Retry Payment" on Plaintiff's account statement. (*Id.* (¶ 44)). All told, Fifth Third charged $111 in fees to process a single $13 payment to Uber. (*Id.* (¶ 45)). This pattern repeated on August 1, 2017 and August 8, 2017, when Fifth Third charged two $37 NSF fees (totaling $74) on a single $6.99 Uber ride. (*Id.* (¶ 48)).

Plaintiff was charged OD fees in three other instances. On June 22, 2017, Plaintiff took an Uber ride that cost $5.00; he was charged a single $37 OD fee. (*Id.* (¶ 94)). On July 20, 2017, Plaintiff took two Uber rides that each cost $4.99; he was charged with a $37 OD fee for each ride. (*Id.* (¶ 92)). On July 27, 2017, Plaintiff took two Uber rides that cost $6.99; he again was charged with a $37 OD fee for each ride. (*Id.* (¶ 93)).

**Deposit Account R&R.** Plaintiff alleges that the Deposit Account R&R allows Fifth Third to charge "at most" a single NSF fee or a single OD fee on an "item" presented for payment. (FAC, Doc. 17 (¶ 47); *see id.* (¶¶ 49–70)). Plaintiff also alleges that that the Deposit Account R&R expressly states that Fifth Third will not assess OD fees on "one-

4

time" (or "everyday") debit card purchases when a customer, like himself, does not opt-in to "Overdraft Coverage" for this specific purpose. (*Id.* (¶¶ 84–94)).

The following excerpts from the Deposit Account R&R (issued May 2017) are in play:

> Customer authorizes Bank to honor any **items** bearing Customer's account number if Customer has disclosed that account number to the payee or any representative, affiliate, or party associated with the payee, whether or not the **item** is signed by the Customer. Customer further agrees that Bank may presume that authorization was obtained by the issuer of the item. For example, if Customer voluntarily gives information about their account (such as the routing number and account number) to a party who is seeking to sell Customer goods or services, and Customer does not physically deliver a check to the party, **any debit to the account initiated by the party to whom you gave the information is deemed authorized. Customer is responsible for all properly payable items**.[7]

*****

> Customer agrees that Bank will not be liable if Customer fails to exercise ordinary care in examining their [account] statements. **Customer will notify Bank of any discrepancy with any item, including, but not limited to, deposits, withdrawals, and checks, within thirty (30) days** of the statement mailing or made available to customer date. Customer will also notify Bank of any forgery or alteration of any item within thirty (30) days of the statement mailing or made available to customer date. **If notification is not received, Bank will have no liability for such item(s).**[8]

*****

> You can avoid overdraft situations by always making sure you have sufficient funds in your account to cover all of the debits (-) you make. We have services available to help you keep track of your account balance and the money you have spent. . . . We also offer several

---

[7] (Doc. 49-1 Exh. A-4 PAGEID 987 (GENERAL DEPOSIT ACCOUNT TERMS, Checks, Withdrawals, Transfers, and Other Charges (¶ 5) (emphasis added))).

[8] (Doc. 49-1 Exh. A-4 PAGEID 990 (GENERAL DEPOSIT ACCOUNT TERMS, Statements & Notices (¶ 1) (emphasis added))).

options that may help you manage times when you are facing an overdraft situation. **These options include** Overdraft Protection and, for consumer accounts, **Overdraft Coverage for** ATM and **one time debit card transactions**.[9]

*****

**We may assess a fee for overdrafts created by** checks, in-person withdrawals, ATM withdrawals, **debit card transactions**, or other debits. **We may assess an overdraft/returned item fee whether we pay or return a debit (-).** See the "Deposit Account Pricing & Services" section of the Welcome Kit for information on the fees.

. . . .

For debits (-) which require approval at the time of the transaction, such as debit card purchases, we may authorize or decline the debit (-) if the transaction would overdraw your account. **Even if we authorize a debit card item, you may still be assessed an overdraft fee if your account does not have sufficient funds to pay the debit (-) when it is actually presented for payment and posts to your account.**

These are the ways a debit (-) may be handled when there is not enough money in your account:

- **If you choose to enroll, Overdraft Protection may be used to pay the debit (-)** (using funds from another Fifth Third account).
- **Overdraft Coverage may be applied by the Bank, at the Bank's discretion, to pay the debit (-)**, resulting in a negative balance in your account.
- Your debit (-) may be returned unpaid[.]

If you are charged overdraft or returned item fees, the fees will be an additional debit (-) to your account and will further increase the negative balance in your account if a deposit is not made on time. **For consumer accounts, we will not assess a per-item overdraft fee for** ATM and **one-time debit card items unless you have accepted Overdraft Coverage on your account for these transactions**.

<u>You are responsible for Overdrawn Accounts</u>. **As a Fifth Third customer, you agree to immediately pay to us the amount of any overdraft, plus any related fees.** Our payment of a debit (-) when there is not enough money in your account is not an application for credit. You also acknowledge that the amount of deficiency, whether

---

[9] (Doc. 49-1 Exh. A-4 PAGEID 997 (ACCOUNT OVERDRAFT & RETURNED ITEMS (excluding Express Banking), <u>Managing Your Account</u> (emphasis added))).

6

due to the amount of the overdraft or any fees assessed, is immediately due and payable without further demand.[10]

*****

An overdraft occurs when you do not have sufficient funds in your account to cover a transaction; however, with Overdraft Coverage we may pay it anyway.  One way we can cover your overdrafts is by extending a standard Overdraft Coverage service as part of your checking account relationship.  As part of this service, we do authorize and pay overdrafts for the following types of transactions:

- Checks and other transactions made by using your checking account number
- Automatic bill payments

**However, we do not authorize and pay overdrafts for the following types of transactions unless you instruct us to do so:**

- ATM transactions
- **Everyday debit card transactions**

**If you want us to authorize and pay overdrafts for ATM and Debit Card transactions, contact us** or visit 53.com/accountmanagementservices.  You may change your Overdraft Coverage preference selection at any time by any of the methods noted above.[11]

*****

Checking and Savings Account Overdraft/Returned Item Fee Beginning May 2, 2017.  $37 **per item** for each occurrence.  No **per item** overdraft/returned item fees are charged when your account is overdrawn by $5 or less at the end of our Business Day.  You will not be charged for more than 5 **items** per Business Day.[12]

*****

Overdraft Protection Transfer[.] **If you are enrolled in Overdraft Protection**, funds are moved automatically from one of your other

---

[10] (Doc. 49-1 Exh. A-4 PAGEID 999 (ACCOUNT OVERDRAFT & RETURNED ITEMS (excluding Express Banking), Additional Overdraft Information & Fees (emphasis added))).

[11] (Doc. 49-1 Exh. A-4 PAGEID 999 (ACCOUNT OVERDRAFT & RETURNED ITEMS (excluding Express Banking), Overdraft Coverage (emphasis added))).

[12] (Doc. 49-1 PAGEID 942 (Consumer Accounts (excluding Express Banking) Fifth Third Pricing and Services at a Glance, Overdraft Fees and Returned Payments (emphasis added))).  The May 2017 version does not contain a consumer account fee schedule; this fee appears in the (earlier) February 2017 version.

Fifth Third Bank accounts. Overdraft Protection transfer fee: $12 per transfer. No fee is charged when your account is overdrawn $5 or less at the end of the Business Day.[13]

*****

Debit/ATM Overdraft Coverage Options[.] With Overdraft Coverage, debits and payments may be made even if you do not have enough money in your account. *Overdraft Coverage for Checks and Automatic Debits comes standard with most checking accounts (per-item overdraft fees apply). **Overdraft Coverage for** ATM transactions and **Debit Card purchases is optional and requires enrollment. When you opt-in to Overdraft Coverage** (ATM/**Debit Card**), **overdraft fees may apply to these transactions. When you choose** not **to opt-in to Overdraft Coverage** (ATM/**Debit Card**), your card transactions are denied and **no overdraft fees are applied to those transactions.**[14]

*****

**The laws of** the United States and **the State of Ohio govern this Agreement regardless of the Customer or User's place of residence** and all transfers are agreed to be originated within the State of Ohio. Customer and User hereby consent to service of process, personal jurisdiction and venue in the state and federal courts in Cincinnati, Ohio and Hamilton County, Ohio, and select such courts as the exclusive forum with respect to any action or proceeding brought to enforce any liability or obligation under these Rules and Regulations Applicable to all Fifth Third Accounts and Cards (excluding Express Banking).[15]

---

[13] (Doc. 49-1 PAGEID 942 (Consumer Accounts (excluding Express Banking) Fifth Third Pricing and Services at a Glance, Overdraft Fees and Returned Payments (emphasis added))). The May 2017 version does not contain a consumer account fee schedule; this fee appears in the (earlier) February 2017 version.

[14] (Doc. 49-1 PAGEID 942 (Consumer Accounts (excluding Express Banking) Fifth Third Pricing and Services at a Glance, Overdraft Fees and Returned Payments (emphasis added))). The May 2017 version does not contain a consumer account fee schedule; this language appears in the (earlier) February 2017 version.

[15] (Doc. 49-1 PAGEID 1004 (ELECTRONIC BANKING) (emphasis added)).

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Courts do not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is **plausible** on its face." *Id.* at 570 (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

On a Rule 12(b)(6) motion, a district court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (internal quotation marks and citation omitted); *Berryland Trading, Inc. v. Transp. Ins. Co.*, 754 F. App'x 370, 370 n.2 (6th Cir. 2018) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). The ability of the court to consider supplementary documentation has limits, however, in that it must be "clear that there exist no material disputed issues of fact concerning the relevance of the document." *Mediacom Se. LLC v. BellSouth*

*Telecomms., Inc.,* 672 F.3d 396, 400 (6th Cir. 2012) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

It is clear, in this case, that Fifth Third's Deposit Account R&R (and Debit Card Agreement) are relevant documents.

### III. ANALYSIS

As an overview, Fifth Third argues that: Plaintiff's breach of contract claim fails because the Deposit Account R&R permits it to charge the multiple NSF fees in question; Plaintiff's California's UCL claim is preempted by federal law, barred by the Ohio choice-of-law clause in the Deposit Account R&R, and fails because his breach of contract claim provides an adequate remedy at law; and, under the Deposit Account R&R, Plaintiff was required to dispute the OD fees in question within 30 days as a "condition precedent" to bringing a lawsuit.

#### A. Plaintiff's Breach of Contract Claim (First Claim for Relief) as to NSF Fees

"Under Ohio law, contract interpretation is a matter of law when a contract's terms are clear and unambiguous." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Long Beach Ass'n, Inc. v. Jones*, 82 Ohio St.3d 574, 697 N.E.2d 208, 209–10 (1998)). "Contractual language is ambiguous 'only where its meaning cannot be determined from the four corners of the agreement or **where the language is susceptible of two or more reasonable interpretations**.'" *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *Covington v. Lucia*, 151 Ohio App.3d 409, 784 N.E.2d 186, 190 (2003)) (additional citations omitted) (emphasis added). "'[C]ourts should examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract.'" *Eastham v. Chesapeake Appalachia, L.L.C.*,

754 F.3d 356, 361 (6th Cir. 2014) (quoting *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 953 N.E.2d 285, 292 (2011)). Additionally, courts should "look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement." *Id.*

Fifth Third argues that Plaintiff's breach of contract claim fails because the multiple NSF fees assessed were contractually authorized. The Deposit Account R&R allows Fifth Third to "assess an overdraft/returned item fee whether we pay or return a debit (-)." The "overdraft/returned item fee" is defined as "$37 per item for each occurrence." Fifth Third reads these two provisions together, maintaining that "the only plausible interpretation is that an NSF fee is charged for *each* 'occurrence' of a debit being presented to Fifth Third for payment from Howards' account if his account lacks sufficient funds at each point in time when the debit is presented for payment, even if the debit is a second or third attempt to obtain payment of the same charge." (Doc. 49 PAGEID 872 (emphasis in original)). Fifth Third contends that Plaintiff's interpretation ignores inclusion of the prepositional phrase "for each occurrence." (*Id.*). "If Howards is right, and only one NSF Fee can be charged for a single 'item' no matter how many times it is presented for payment, then the words 'for each occurrence' are rendered surplusage because there could never be more than one 'occurrence' of an NSF Fee or OD Fee for a single 'item.'" (*Id.*). Ohio law, however, requires courts to "give meaning to every paragraph, clause, phrase, and word, omitting nothing as meaningless, or surplusage." (*Id.* (quoting *Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp.*, 16 F.3d 684, 686 (6th Cir. 1994))).

Plaintiff accurately points out that the Deposit Account R&R does not explicitly state that "a single 'item' can be presented for payment more than once if it is returned

11

unpayable due to non-sufficient funds." (Doc. 57 PAGEID 1084 (quoting Doc. 49 PAGEID 872)). Nor is "item" (or "occurrence") a defined term within. Arguing against dismissal, Plaintiff spotlights Fifth Third's advice in the R&R that it "may assess <u>an</u> overdraft/returned item fee whether we pay or return a debit (-)." The article "an" implies a single fee. Further, Fifth Third links "overdraft" and "returned item" with a forward slash, allowing the inference that they are so closely related as to be interchangeable. An overdraft fee, by definition, can be assessed only once. To assume the same with respect to a returned item fee is, in Plaintiff's view, a reasonable interpretation. The Court agrees.

"If the language in the contract is ambiguous, the court should generally construe it against the drafter." *Savedoff*, 524 F.3d at 764 (citing *Central Realty Co. v. Clutter*, 62 Ohio St.2d 411, 406 N.E.2d 515, 517 (1980); *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 798 (6th Cir. 2003) (applying Ohio law)). "In particular, 'where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the non-drafting party.'" *Id.* (quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256, 1261–62 (2003)). Here we have a standard contract drafted by Fifth Third to which its checking account customers must agree. Plaintiff's construction of this contract—as it relates to whether more than one NSF fee can be assessed per "item"—is plausible. Accordingly, Fifth Third's Motion to Dismiss Plaintiff's breach of contract claim regarding assessment of multiple NSF fees is **DENIED**.

### B. Plaintiff's Derivative Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (First Claim for Relief)

Fifth Third also moves to dismiss Plaintiff's derivative claim for breach of the implied covenant of good faith and fair dealing, "because there is no cognizable bad faith claim in Ohio absent a breach of an express contractual provision." (Doc. 49 PAGEID 873 (citing, inter alia, *Patrick v. CitiMortgage, Inc.*, 676 F. App'x 573, 577 (6th Cir. 2017) ("Ohio law recognizes only a breach of contract claim; it does not recognize a free-standing or independent claim for breach of the covenants of good faith and fair dealing."))). Fifth Third is correct in stating this general principle of law. However, because the Court has denied Fifth Third's Motion as to the underlying contract, it will correspondingly deny it as to Plaintiff's derivative claim.

### C. Fifth Third is Not Entitled to Dismissal of Plaintiff's Breach of Contract Claim (First Claim for Relief) Based on the Notice Provision in the Deposit Account R&R

Even if the Court were to find the Deposit Account R&R ambiguous as to the assessment of multiple NSF fees, Fifth Third maintains that Plaintiff "waived his breach of contract claim (including his claim for breach [of] the covenant of good faith and fair dealing) by failing to provide [      ] notice as required by the [Deposit Account R&R]." (Doc. 49 PAGEID 882–83 ("Howards does not allege compliance with the notice requirement, nor does the FAC allege compliance with all conditions precedent.")). And, to be clear, this is the only basis upon which Fifth Third moves to dismiss Plaintiff's breach of contract claim that the Bank improperly assessed OD fees on various Uber rides because he did not opt-in to Overdraft Coverage for "one-time" (or "everyday") debit card purchases.

In support, Fifth Third cites to language in the "Statements & Notices" provision (within the "General Deposit Account Terms") that provides: "Customer will notify Bank of *any discrepancy with any item*, including, but not limited to, deposits, withdrawals, and checks, within thirty (30) days of the statement mailing or made available to customer date. . . . If notification is not received, Bank will have *no liability* for such item(s)." (Doc. 49 PAGEID 882 (emphasis added by Fifth Third)). Fifth Third contends that, "[w]here as here, a contract requires a party to provide notice when it believes another party has improperly charged its account, the notice provision operates as a condition precedent under Ohio law." (*Id.* (citing, inter alia, *Moraine Materials Co. v. Cardinal Operating Co.*, No. CA 16782, 1998 WL 785363, at *2 (Ohio App. 2 Dist. Nov. 13, 1998); *Golihue v. Nat'l City Bank*, 969 N.E.2d 1233, 2011-Ohio-5405, ¶¶ 16–19 (Ohio App. 10 Dist. 2011)).

Plaintiff counters that the notice provision "applies to discrepancies that arise from actions that customers and third parties take[,]" and not to "charges that [Fifth Third] levies on its customers." (Doc. 57 PAGEID 1097). "This makes sense," according to Plaintiff, because Fifth Third "is already aware of what charges it levies on its customers, and so, it would not need notice that it made these charges." (*Id.*). Fifth Third could have included "fees" along with "deposits, withdrawal, and checks," but did not. (*Id.*). Fifth Third pushes back, explaining that the notice provision "does not speak in terms of actors." (Doc. 68 PAGEID 1134). Rather, the provision requires notice as to <u>any</u> "item" and expressly states that an "item" is <u>not</u> limited to "deposits, withdrawals, and checks." (*Id.*).

Fifth Third took this same position (as to the same notice provision) in a consolidated case filed here in the Southern District in which plaintiffs challenged the propriety of ATM fees charged to their accounts. *See Smith v. Fifth Third Bank*, No. 1:18-

14

cv-464, 2019 WL 1746367, at *7–9 (S.D. Ohio Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 4050946 (S.D. Ohio Aug. 28, 2019). The Magistrate Judge thoroughly analyzed—and distinguished—the authorities on which Fifth Third relied. She also discussed the ruling in *Arlington Video Prods. Inc. v. Fifth Third Bancorp*, 569 F. App'x 379 (6th Cir. 2014), when the Sixth Circuit determined that a virtually identical notice provision (applicable to business accounts) did not operate as a statute of limitations. *Id.* at *9. Admittedly the Sixth Circuit did not consider whether the notice provision could operate as a "condition precedent" to bar recovery under Ohio law. *Id.* Nonetheless, the Magistrate Judge observed, "*Arlington* evinces considerable skepticism toward applying the notice provision to the consumer's challenge to Fifth Third's fees: 'At most this paragraph attempts to release the Bank from liability if its customer fails to exercise ordinary care in examining and reconciling its bank statements and fails to notify the Bank of "any discrepancy with any item" within thirty days.'" *Id.* (citing *Arlington*, 569 F. App'x at 390). The Magistrate Judge summarized her recommendation as follows:

> The undersigned is unpersuaded by Fifth Third's argument that it is entitled to dismissal based on the "condition precedent" nature of the notice provision. Contrary to Fifth Third's position, case law suggests: (1) the notice provision does not clearly and unambiguously apply to the bank fees at issue; (2) to interpret the notice provision to apply to bank fees could be viewed as hypertechnical and unconscionable; (3) the short 30-day time limit may be unreasonable as applied to Fifth Third's imposition of fees; and/or (4) any violation could be viewed as "harmless" in the context of adhesion contracts in the banking industry. *See generally, Hackman v. Szcygiel*, [No. 06AP-187,] 2006 WL 3199278 at *3 (Ohio [App. 10 Dist.] Nov. 7, 2006). At the Rule 12(b)(6) stage, the undersigned also rejects Fifth Third's arguments that Plaintiffs' breach of contract and breach of implied covenant of good faith and fair dealing claims are "waived," (Doc. 70-1 at 19), as that argument is unsupported by Fifth Third's own cases. *See Moraine Materials*, 1998 WL 785363 at *6 (rejecting position that failure of notice operated as an estoppel or waiver of claims). Moreover, this Court has held that a plaintiff is not

15

> required "to anticipate and plead facts sufficient to defeat an affirmative defense." *Astar Abatement, Inc. v. Cincinnati City School Dist. Bd. of Ed.*, [No. 1:11-cv-587,] 2012 WL 481799 at *3 (S.D. Ohio Feb. 14, 2012) (holding that dispute as to whether plaintiff met contractual notice requirements could be addressed more properly at summary judgment stage).

*Id.* at *9. This Court hereby incorporates the Magistrate Judge's reasoning as its own and will deny Fifth Third's Motion based upon Plaintiff's purported failure to comply with the 30-day notice provision.

### D. Plaintiff's UCL Claim (Second Claim for Relief)

The State of California prohibits "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice[.]" Ca. Bus. & Prof. Code § 17200. Plaintiff alleges that Fifth Third's practice of charging multiple NSF fees on the same transaction, and OD fees on "one-time" (or "everyday") debit card transactions when a customer does not opt-in to Overdraft Coverage, is both unfair and fraudulent in violation of the UCL. Fifth Third moves to dismiss Plaintiff's UCL claim because, among other reasons, it is barred by the choice-of-law clause in the Deposit Account R&R.

Plaintiff insists that the choice-of-law language[16] should be construed narrowly to encompass only claims arising out of the R&R, as distinguished from his tort claim under the UCL. (Doc. 57 PAGEID 1092 (citing *In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 316 F. Supp. 3d 1021, 1028–29 (S. D. Ohio 2015) ("[U]se of the limiting language 'this agreement' or 'this contract' does not encompass non-contract claims.")

---

[16] "The laws of the United States and the State of Ohio **govern** this Agreement regardless of the Customer or User's place of residence[.]" (Doc. 49-1 PAGEID 1004 (ELECTRONIC BANKING) (emphasis added)).

16

(citing cases))). Therefore, the Ohio choice-of-law provision contained within the Deposit Account R&R does not apply. (*Id.*).

The Court is unpersuaded. First, the case on which Plaintiff principally relies, *E.I. du Pont*, is distinguishable. It concerned a choice-of-law provision in a settlement agreement (in complex multi-district litigation) in which the prior settlement had specifically "preserved" and "carved out" certain personal injury and wrongful death claims to be litigated separately at a later date, a common occurrence in class actions. 316 F. Supp. 3d at 1026–27. The court determined that the choice-of-law provision was "plainly intended" to address disputes over whether the parties performed their respective obligations under the settlement agreement <u>only</u>. *Id.* at 1028–29.

Second, relevant allegations in the FAC brook no distinction between the factual underpinnings of Plaintiff's UCL claims (for misrepresentation and material omission) and his breach of contract claim.[17] Both hinge on construction of language in the Deposit Account R&R. That being the case, the Court finds that the Ohio choice-of-law provision should—and does—apply. *See Baumgardner v. Bimbo Food Bakeries Distrib.*, Inc., 697 F. Supp. 2d 801, 804–06 (N.D. Ohio 2010) (scope of New York choice-of-law provision pertaining to the "validity, interpretation and performance of the [      ] Agreement" included intentional interference with contract and unjust enrichment claims that were "very closely related" to the breach of contract claim); *Morgan Tire of Sacramento v. Goodyear Tire & Rubber Co.*, No. 5:15-cv-2134, 2016 WL 5390412, at **3, 11 (N.D. Ohio

---

[17] (*See* FAC, Doc. 17 (¶ 135) ("Plaintiff relied on [Fifth Third's] representations [in the Deposit Account R&R] regarding its OD Coverage. Specifically, Plaintiff did not believe he would be charged OD Fees on non-recurring debit card transactions. If Plaintiff knew [he] would be charged OD Fees on non-recurring debit card transactions, Plaintiff would have switched banks."), (¶ 136) ("Plaintiff relied on [Fifth Third's] material omission [from the Deposit Account R&R] regarding its NSF Fee practices. Specifically, Plaintiff had no idea he would be charged $111 in NSF Fees for a single $13 Uber ride. If Plaintiff knew he would be charged $111 in NSF Fees for a single Uber ride, he would have switched banks.")).

Sept. 27, 2016) (choice-of-law provision that stated "[t]he terms and provisions of this Agreement shall be construed under and governed by the laws of the State of Ohio" barred a California UCL claim because the allegations relate to performance of the contract).

The Court's analysis does not end here, however. A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003). "Ohio law[18] enforces a contract's choice-of-law provision unless (1) the chosen State has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice or (2) its application would contradict a fundamental policy of another State with a materially greater interest in the issue." *Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 185 (6th Cir. 2017) (citing *Sekeres v. Arbaugh*, 31 Ohio St.3d 24, 508 N.E.2d 941, 942 (1987)). Neither exception applies. Ohio plainly has a "substantial relationship" to the parties because Fifth Third's headquarters and principal place of business is in Cincinnati. (FAC, Doc. 17 (¶ 11)); *see Sims*, 876 F.3d at 185–86 ("General Motors maintains its headquarters in Michigan, which suffices to meet Ohio's substantial relationship test.") (citing *Century Bus. Servs., Inc. v. Barton*, 197 Ohio App.3d 352, 967 N.E.2d 782, ¶¶ 63–69 (Ohio App. 8 Dist. 2011)). As to the second exception, it is true that the Ohio consumer protection statute[19] does not apply to financial institutions (with

---

[18] The parties agree that the choice-of-law issue is governed by Ohio law. (Doc. 49 PAGEID 876 n.4; Doc. 57 PAGEID 1092 n.11).

[19] The Ohio Consumer Sales Practices Act (OCSPA) is codified at Ohio Rev. Code § 1345.01 *et seq.* A "consumer transaction" does not include transactions between financial institutions (as defined in Ohio Rev. Code § 5725.01(A)) and their customers. Ohio Rev. Code § 1345.01(A); *see Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 719 (6th Cir. 2015) ("This transaction [an attempt to collect attorneys' fees related to credit card debt collection] between a consumer and a financial institution falls outside Ohio's statutory definition of a 'consumer transaction.'").

some specific exceptions inapplicable here). But this circumstance is not enough to refuse enforcement of the choice-of-law provision. In affirming dismissal of a UCL claim pursuant to a New Jersey choice-of-law clause, the Ninth Circuit[20] held that "the mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law." *Century 21 Real Estate LLC v. All Prof. Realty, Inc.*, 600 F. App'x 502, 504 (9th Cir. 2015) (quoting *Medimatch, Inc. v. Lucent Tech. Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) (citing *Wong v. Tenneco*, 39 Cal.3d 126, 216 Cal. Rptr. 412, 702 P.2d 570, 576–77(1985))); *see also Kilgore v. KeyBank, Nat'l Ass'n*, No. C 08-2958 TEH, 2009 WL 1975271, at **5–6 (N.D. Cal. July 8, 2009) (dismissing UCL claim against bank, even though the OCSPA would not permit suit, in the absence of authority of a "fundamental policy [of California] in favor of UCL suits **against banks**") (emphasis added), *rev'd on other grounds*, 718 F.3d 1052 (9th Cir. 2012).[21]

---

[20] California is one of the nine states (along with the territory of Guam) that fall within the geographic boundaries of the United States Court of Appeals for the Ninth Circuit. https://www.ca9.uscourts.gov/information/circuit-map/ (last visited 1/30/2023).

[21] Plaintiff cites *Aral v. Earthlink, Inc.*, 134 Cal. App.4th 544, 564, 36 Cal. Rptr.3d 229, 244 (2005), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), to support the proposition that the UCL reflects a "fundamental policy" of the State of California. The plaintiff there was a California resident who sought to represent only California consumers, relying solely on the California UCL to support his claim. Defendant EarthLink, with its principal place of business in Atlanta, tried to enforce a Georgia choice-of-law clause that would give effect to a class arbitration waiver provision otherwise unenforceable under California law. The appellate court affirmed the trial court's decision to deny EarthLink's petition to compel arbitration in Georgia, because "[t]he fundamental policy at issue is not simply the right to pursue a class action remedy, but the right of California to ensure that its citizens have a viable forum in which to recover minor amounts of money allegedly obtained in violation of the UCL." *Id.* "Forcing consumers to travel to a far location and depriving them of any hope of class litigation would pose an insurmountable barrier to recovery of small sums unjustly obtained, and undermine the protections of the UCL." *Id.* On this basis, then, the appellate court determined that there was "no doubt" that California had a "materially greater interest" than Georgia as to this issue. *Id.*

*Aral* is easily distinguishable, as there is no class arbitration waiver provision in the Deposit R&R that Ohio law purportedly would enforce.

Having concluded that the Ohio choice-of-law clause bars Plaintiff's UCL claim, the Court need not reach Fifth Third's alternate arguments that it is preempted by federal law or fails because Plaintiff's breach of contract claim provides an adequate remedy at law.

IV. **CONCLUSION**

Plaintiff's First and Second Claims for Relief pertaining to OON fees (only) and Plaintiff's Third Claim for Relief (in its entirety) are dismissed by stipulation of the parties. (Doc. 97 PAGEID 1739). Defendant Fifth Third Bank's Motion to Dismiss Plaintiff's First Amended Class Action Complaint (Doc. 49), as it relates to the two remaining theories of liability alleged in Plaintiff's First and Second Claims for Relief, is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion as it relates to Plaintiff's Second Claim for Relief is **GRANTED**. Defendant's Motion as it relates to Plaintiff's First Claim for Relief, however, is **DENIED**.

**IT IS SO ORDERED**.

/s/ *Michael R. Barrett*
JUDGE MICHAEL R. BARRETT